(No. 19634.—

THE PEOPLE *ex rel.* The Chicago Bar Association, Relator,
*vs.* M. EDWARD SIMMONS, Respondent.

*Opinion filed October 25, 1930—Rehearing denied Dec. 6, 1930.*

JOHN L. FOGLE, for relator.

HARRY A. IUNGERICH, (M. EDWARD SIMMONS, *pro se,*)
for respondent.

Mr. JUSTICE DEYOUNG delivered the opinion of the
court:

Upon leave granted, an information in the name of the
People of the State, on the relation of the Chicago Bar
Association, was filed, charging M. Edward Simmons with
unprofessional conduct as an attorney and counselor at law
and requiring him to show cause why his name should not
be stricken from the roll of attorneys of this court. He
filed an answer and the cause was referred to a commis-
sioner who reported the evidence with his conclusion that
the respondent's name should be stricken from the roll.
Exceptions to the commissioner's finding were filed by the
respondent.

M. Edward Simmons, forty-one years of age, was admitted to the bar of this State in the year 1921, and since has practiced law in the city of Chicago. His professional conduct was the subject of a number of complaints made to the Chicago Bar Association by several of his clients and these complaints are embodied in the nine counts of the information. Owing to the absence from the hearings before the commissioner of the persons whose grievances were set forth in the first, second, sixth and eighth counts and the inability of the relator to ascertain their whereabouts, no evidence was offered to support the allegations of these counts and they need not be considered. The evidence adduced by the relator in support of the charges made against the respondent in the remaining counts and the respondent's explanation or justification of his course with respect to the matters which gave rise to these complaints will be stated in the order that the charges are laid in the information.

The subject of the third count is the complaint of Arthur A. Johnson. In February, 1927, Johnson's automobile was damaged in a collision with a car driven by Henry J. West and Johnson employed the respondent to recover his damages. After some negotiations West offered the respondent $65 in settlement of the claim and Johnson accepted the offer. On March 10, 1927, West sent the respondent a check for that sum. Between the receipt of the check and the first day of June, Johnson, on several occasions, inquired of the respondent whether he had received any money from West and the respondent, in each instance, answered that he had not. Johnson met West in June and learned that the latter had sent the check to the respondent about three months before and the canceled check was given to Johnson. When Johnson exhibited the check to the respondent, he admitted that he had received and cashed it and had spent the proceeds, and he promised to pay Johnson the amount of the check in installments, if given time, without making any deduction for his services. Payments

aggregating $35 were thereafter made by the respondent to Johnson.

The respondent's version of the matter is that when the claim was brought to him he told Johnson his charge to prosecute suit would be one-third of the sum recovered, the plaintiff to pay the costs, and that Johnson was satisfied with this arrangement; that after some negotiations he informed Johnson that West had offered him $65 in settlement of the claim and that Johnson authorized him to accept the offer; that immediately after the receipt of the check, he, the respondent, informed Johnson of the fact; that the latter then, for the first time, stated that he had a different understanding of their arrangement and that he would not allow any deduction from the amount of the check for the respondent's fees.

The fourth count relates to the complaint of Axel Franzen and Sophie Franzen, his wife. In February, 1926, they lived in an apartment at 2020 Ainslie street, Chicago, under a lease expiring October 1, 1926, which required the payment of rent at the rate of $80 per month. Changes in their financial situation made it difficult, if not impossible, to continue to pay the rent so fixed and they desired, for that reason, to be relieved from the obligations of the lease. To this end Mrs. Franzen consulted the respondent. He told her that if her husband failed to pay the rent the lessor would garnishee his wages. He advised her, however, not to pay the rent, and in the event the landlord took any action upon the lease, to consult him again. Shortly thereafter a landlord's five-day notice, terminating the tenancy if the rent were not paid, was served. Mrs. Franzen took the notice to the respondent, and he advised her to leave the rent with him and he would pay it to the attorneys for the lessor. In accordance with this suggestion, Mrs. Franzen deposited with the respondent $40 on July 3; $40 on July 14; $70 on July 28; $20 on August 25, and $65.25 on September 9, 1926, making a total of $235.25. The

lessor recovered a judgment upon the lease in the municipal court of Chicago against Franzen for $265, and to obtain satisfaction of the judgment a deputy bailiff levied upon certain furniture which belonged to Mrs. Franzen. She endeavored to ascertain from the respondent the meaning and purpose of the proceeding, and she inquired of him whether he had applied on the rent accrued the money she had deposited with him. He assured her that he had done so; that he would investigate the pending proceeding and that she need not worry. Upon a trial of the right of property, the respondent caused the levy on the furniture of Mrs. Franzen to be released. Mr. and Mrs. Franzen moved to another apartment. Shortly thereafter the attorney for the owner of the apartment they had vacated called upon them and demanded that they pay the rent for their occupancy of that apartment. Mrs. Franzen told him she had given the respondent money for that purpose and she exhibited his receipts. She then notified the respondent of the claim made and he again insisted that he had applied the money on the rent as he had agreed to do. Thereafter satisfaction of the claim for rent was sought by the garnishment of Franzen's wages; still later a citation was issued for his appearance in the debtor's court, and finally he availed himself of the provisions of the Bankruptcy act. Complaint of the respondent's misconduct was made to the Chicago Bar Association and Mrs. Franzen caused his arrest. At the police station he paid her $40 and the criminal charge was dismissed. The respondent paid nothing further to Mrs. Franzen until 1928, when, upon condition that she sign a withdrawal of the complaint to the bar association, he promised to pay her $50. The withdrawal was signed and the money was paid. Out of the $235.25 which she gave him for the purpose of paying rent, he returned $98 to her.

The respondent claims that he rendered professional services in various matters for Franzen and his wife. A judgment for $175 and costs had been rendered against Franzen

and the respondent testified that he effected a settlement of this judgment for $83.60. Later when the W. W. Kimball Company was about to take possession of a piano because Mrs. Franzen had failed to pay the installments of the purchase price as they matured, he succeeded in reinstating the contract and obtaining an extension of time to make the payments. He further testified that he represented Mrs. Franzen in the trial of the right of property in which he succeeded in releasing her furniture from the levy made upon it; that she brought to him a five-day notice and copies of the complaint and summons in a forcible detainer suit and that, after ascertaining the facts, he advised her she would have to move; that later she returned with copies of the complaint and summons in a suit brought against her by the Wallen Fine Furniture Company and that he represented her in the suit and it was dismissed; that she had a claim against Versaw Brothers, moving· contractors of St. Joseph, Michigan, for the loss of a rug which she valued at $100; that he went to St. Joseph at her request to obtain a settlement of her claim, but found and reported to her that liability was denied and that no amicable settlement could be made. With respect to the lease of the apartment and the proceedings which grew out of the attempts to avoid its obligations, he testified that after the judgment for $265 had been rendered, Mrs. Franzen told him she would not pay any of the rent then due; that he should endeavor to make a reasonable settlement of the whole transaction and if it could be done to apply the money which she would deposit with him from time to time for that purpose; that he entered upon negotiations with the lessor's agents to bring about the settlement desired by Mrs. Franzen, but that it could not be effected, and that the sum of her deposits with him for the purpose stated was $235, but that in the meantime he had refunded $55 to her. It further appears from the testimony of the respondent that subsequently Mrs. Franzen asked him for money; that he

told her if he made a reasonable charge for the services he had rendered, she would be indebted to him; that a discussion ensued in which she threatened to have him arrested and to make complaint to the bar association; that she did both and when the criminal charge was about to be heard she demanded $100; that he refused to comply with the demand but finally gave her $40 and the charge was dismissed; that later in August, 1928, he lent her $50, which, notwithstanding her promise to do so, has never been re-paid; that his payments to her amount to $153 and that she remains indebted to him, for services rendered in her behalf, in the sum of $118. The respondent denied that he ever told Mrs. Franzen he had applied the money she left with him toward the payment of the rent for the apartment at 2020 Ainslie street.

The fifth count presents the complaint of Graham W. Benton. On December 19, 1926, the Merchants and Manufacturers Securities Corporation recovered a judgment against Benton for $428, which represented the unpaid balance of the purchase price of an automobile and the plaintiff's attorney's fees. Benton had a substantial equity in the car but was unable to pay the judgment. When the return of the car was demanded, Benton consulted the respondent. The latter suggested to Benton that he might raise the money required by placing a second mortgage on his real estate, and that he, the respondent, would be able to negotiate the mortgage. Accordingly Benton and his wife executed their note dated February 7, 1927, for $500, payable in eleven monthly installments of $40 each and a final installment of $60, and secured its payment by a trust deed on their home. It was agreed that the net proceeds of the loan would be $420 and the note and trust deed were delivered to the respondent. He succeeded in reducing the judgment, by the elimination of the plaintiff's attorney's fees, to $403, and about the time the note and trust deed were executed he made an arrangement with the attorney

for the judgment creditor by which the judgment would be satisfied upon the prompt payment of $400. The respondent obtained $420 upon the note and trust deed but he did not satisfy the judgment. The judgment creditor's attorney had no knowledge of the provision Benton had made for the payment of the judgment, and because it remained wholly unsatisfied, he caused Benton's arrest on March 17, 1927, on the charge of concealing and disposing of mortgaged property. Informed of Benton's plight, the respondent obtained a surety on his recognizance and Benton was released from custody. Benton then endeavored to obtain from the respondent the money which the latter had received by the negotiation of the second mortgage. Unsuccessful in that respect, Benton borrowed $100 from a friend and paid the money to the attorney for the judgment creditor, whereupon the criminal charge, a hearing upon which had been postponed a number of times, was dismissed. Thereafter Benton caused the respondent's arrest upon the charge of embezzlement. A hearing upon the charge was postponed from time to time and finally the parties effected a settlement by the return of the trust deed to Benton, the dismissal of the criminal charge and the delivery of a statement signed by Benton that he would not prosecute the complaint which he had filed with the bar association. The note which Benton and his wife had executed apparently was not returned with the trust deed for the respondent subsequently pledged it, with another, to secure the payment of a note dated November 1, 1927, executed by himself and his wife, for $1150 and made payable to the order of William H. Schnell, in sixty days after its date. When questioned concerning his transaction with Schnell, the respondent refused to answer on the ground that it might incriminate him.

The respondent's justification for his course as Benton's attorney is that Benton was unwilling to pay the judgment while the criminal prosecution against him was pending and

that Benton directed him, for that reason, to retain the proceeds derived from the negotiation of the second mortgage; that out of these proceeds, he, the respondent, made two payments in reduction of the judgment against Benton, the first of $100 and the second of $50; that he also paid $50 to the surety on Benton's recognizance; that after other disbursements in Benton's behalf, there remained to his credit $173.90; that the respondent borrowed this sum from Benton upon the promise that he would re-pay it by discharging the monthly installments of the second mortgage as they matured; that he fully paid all the installments of that mortgage and that Benton afterwards demanded $420, the net proceeds of the mortgage, and when the respondent refused to comply with the demand, Benton replied that he would present the matter to the bar association.

The complaint of Kate Busse is presented by the seventh count. She employed the respondent to collect rent from certain of her tenants. He collected $75, paid her $35, and promised to remit the balance, less his charge of $15 or $20. Mrs. Busse called the respondent over the telephone a number of times and although he promised repeatedly to mail a check for the sum owing to her, the check was not forthcoming. The respondent's testimony is that he recovered a judgment for $75 in favor of Mrs. Busse and against two of her tenants; that to obtain satisfaction of the judgment he garnisheed the employer of her judgment debtors; that he collected $39 from one of the debtors and $40 from the other and that, out of each of these collections, he remitted $25 to Mrs. Busse, retaining the residue which, he insists, was less than his services were reasonably worth.

The ninth count is concerned with the complaint of Carl R. Carlson. Carlson was the manager of the Fernwood Apartment Hotel in Chicago, and Mrs. Ted Carson, who had been evicted from the hotel, was indebted to it in the sum of $739. The claim was given to the respondent for collection upon the understanding that he was to re-

tain, as his compensation, one-half of whatever sum he collected and that the creditor would pay the costs of suit. The respondent instituted suit upon the claim and recovered judgment. A levy was about to be made on the judgment debtor's furniture, for which purpose an indemnifying bond had been given the bailiff, when it was agreed that Mrs. Carson might satisfy the judgment by the payment of $500 in installments. Carlson remitted $15, the cost of the indemnifying bond, to the respondent. Later, when a bill for the premium on the bond was sent to Carlson, he called the respondent's attention to it and the latter said he had paid the bill and that he had collected $40 from Mrs. Carson. Shortly thereafter Carlson called upon the respondent at his office and asked him to exhibit his account in the case, but the request was. denied. The surety company continued to send bills for the premium to Carlson and finally he paid it. The respondent explains that after he had collected $40 from Mrs. Carson she disappeared and that he was unable to make an additional collection upon the judgment; that he notified Mrs. Hunt, Carlson's assistant, of Mrs. Carson's departure; that he also informed Mrs. Hunt that he had expended $38 for costs in the case toward which he had applied Carlson's remittance of $15 and that when the whole transaction is considered, Carlson is still indebted to him.

The respondent's explanations or attempted justifications of his conduct with respect to the foregoing matters are not convincing. If he had promptly reported to his client Johnson, the receipt of the check from West, Johnson's first information that his claim had been settled would not have been derived from the exhibition of the canceled check by West, as the result of Johnson's inquiry, three months after the check had been issued and cashed by the respondent. If, likewise, he had promptly reported that the settlement, which he says Mrs. Franzen desired, could not be made, she would undoubtedly have directed the application

of the money she had deposited with him, and the garnishment of her husband's wages, his citation in supplementary proceedings to satisfy the judgment theretofore rendered upon the lease, and finally his resort to bankruptcy proceedings, it may fairly be assumed, would not have followed. Equally untenable is the claim that Benton, who raised money by the execution of a second mortgage on his home for the purpose of satisfying the judgment rendered against him, later directed the respondent to retain custody of the proceeds of the mortgage at a time when Benton, to obtain the dismissal of a criminal charge which grew out of the same transaction as the judgment, was compelled to borrow from a friend about a quarter of the sum which the respondent says he had available for the purpose and apply the money so borrowed in reduction of the same judgment.

Not only are the respondent's explanations in justification of his professional conduct in the matters under review inherently improbable and therefore not persuasive, but it is difficult, for other reasons, to give credence to much of his testimony. A number of inquiries by Johnson during the period of nearly three months brought denials by the respondent that he had received any money from West. After the bailiff levied upon Mrs. Franzen's furniture, and again after her former lessor's attorney demanded rent from her, the respondent assured her that he had applied the money deposited with him upon the claim for rent. He told Carlson more than once that he had paid the cost of the indemnifying bond. None of these representations was true, for it is undisputed that he had received money from West; that he had not applied on the rent the money deposited with him by Mrs. Franzen, and that he had not paid for the indemnifying bond. When all the facts and circumstances shown by the evidence are considered, the conclusion is inescapable that the respondent appropriated to his own use the money he collected from West, the money Mrs. Franzen deposited with him and the money which he

obtained by negotiating the second mortgage Benton and his wife had executed. Both Franzen and Benton suffered arrest upon criminal charges as the result of the respondent's dereliction of duty. Repeated demands, criminal charges and complaints to the bar association only brought partial remittances to Franzen and Benton and no complete accounting was ever made to them. Benton's note was pledged by the respondent as security for the payment of his personal obligation and when an investigation of that transaction was attempted, it was prevented by the respondent who invoked his constitutional privilege against self-incrimination.

An attorney who receives money which belongs to a client should pay it over to him immediately. If some fact or condition prevents its immediate remittance, the attorney should regard the money as a trust fund, and under no circumstances appropriate it to his own use. (*People* v. *Kwasigroch,* 296 Ill. 542.) The misappropriation of a client's funds by an attorney, either by the failure to remit money collected or by the appropriation to his own use of money entrusted to his care, especially where, as in the present case, the facts and circumstances show that the attorney acted in bad faith and with a fraudulent purpose, is always a ground for disbarment. This court cannot, in the proper discharge of its duty, permit the name of the respondent to remain on the roll of attorneys as a person who is worthy of the confidence of clients and who in the practice of law will exemplify freedom from moral delinquency.

The rule is made absolute and the name of the respondent is stricken from the roll of the attorneys of this court.

*Rule made absolute.*