(No. 20138)
THE PEOPLE *ex rel.* The Chicago Bar Association, Relator,
*vs.* JOSEPH J. LADOUCEUR, Respondent.

*Opinion filed February 19, 1932.*

JOHN L. FOGLE, for relator.

SLAKIS & SPENCE, for respondent.

Per CURIAM: On leave granted, an information was filed in this court, on the relation of the Chicago Bar Association, against the respondent, Joseph J. Ladouceur, charging him with unprofessional conduct and praying that a rule issue requiring him to show cause why his name should not be stricken from the roll of attorneys. The rule was issued, the respondent answered, and the cause was referred to a commissioner to take the evidence and report his conclusions of law and fact. The commissioner found that the respondent should be disbarred, and the cause is before this court for review.

The principal contention of the respondent is that the evidence does not sustain the charges against him.

The information in substance charges that the respondent induced his client, Ida E. Smith, to entrust him with $475, which he pretended to loan to J. J. Roland but which he converted to his own use, and that he gave to his client a note dated June 3, 1927, due two years after date, containing the forged signature of Roland, which note was endorsed by the respondent and was never paid. While the evidence was being taken, counsel for the relator informed the respondent that by leave of this court he intended to amend the information by adding an additional charge against the respondent. It was stipulated that the evidence might be taken on this additional charge without amending the information. The additional charge is that the respondent fraudulently converted to his own use $725 which came into his hands as attorney for Ida E. Smith with instructions from her to distribute it to certain specified persons, which he did not do.

The evidence shows that the respondent was admitted to the bar in 1912 and since 1923 has practiced in Chicago. In February, 1925, Robert L. Smith died testate in Chicago, leaving surviving Ida E. Smith, his widow, and Preston, Grover and Arnold Smith and Viola Minto, who were his children by a former marriage. The will appointed the widow as executrix and devised to her all of the property, which consisted of an interest in certain real estate in Kentucky which Smith had received under the will of his father, which also gave the children of Smith some interest in the real estate. Prior to his death Smith had started negotiations to sell the real estate for $2000. He secured quitclaim deeds from his children, which deeds were in a bank in Kentucky. In securing these deeds the respondent conducted the correspondence with the children at the request of Smith. He wrote letters to some of the children in which they were promised certain payments upon the completion of the sale of the property. Smith died before the sale was concluded and his widow employed the respondent

to probate the will, conduct the administration on the estate and make proof of the heirship of Smith. The respondent filed a final report in the estate in December, 1925, and it is claimed that he neglected to have the report approved and that the estate is not closed. This is denied by him. He was paid in full for his services in settling the estate. In February, 1926, he went to Kentucky and completed the sale of the real estate, and he received a check for $1920. The commissioner found that the respondent paid the widow $825, but she testified that she received $1000. He retained the balance of the money. Before he went to Kentucky he was paid by the widow $125 on account of fees and expenses, and she testified that she then asked him how much more expense there would be, and he replied that there would be no more expense. She paid certain expenses in securing the sale of the real estate, and she decided that the children should be charged with a portion of her expense. She directed the respondent, out of the money in his hands,.to pay to each of the four children certain sums of money. He paid Preston Smith $190 and Viola Minto $55 but made no other payments. Viola Minto owed him $125 on account of professional services he had performed for her in procuring a divorce. He put the balance of the money in his personal bank account and checked against this fund for his personal use until it was exhausted. Various demands were made upon him for the re-payment of the balance of the money but it was never paid.

The funds of a client in the hands of his attorney should be regarded as a trust fund and should be paid over immediately unless conditions prevent. Misappropriation of the funds by the attorney is ground for disbarment. (*People* v. *Simmons,* 341 Ill. 340.) The commissioner found that the respondent had fraudulently converted to his own use the balance of this fund. This finding is sustained by the evidence. Mrs. Smith was the client of the respondent. As the result of his employment he received funds which

belonged to his client He paid her $1000, and $920 was left in his hands by her for a specific purpose. The commissioner found that the respondent had accounted for $375 out of the balance remaining in his hands. The respondent claims that there was due him from his client and from Smith's children certain fees which reduced the amount left in his hands. Even if all these fees were due him they did not exhaust the fund and a substantial balance remained in his hands. It is not material whether he had $400 or $500. The question is whether he had money in his hands belonging to his client for which he failed to account. He admits in his evidence that he had certain money belonging to his client, and at the close of the hearing before the commissioner he offered to pay to the commissioner the balance in his hands. He did not state how much this amount was, but his offer to pay was an admission that he had in his possession money which belonged to his client. The commissioner stated that he was not authorized to receive the money and suggested that the respondent tender the money to his client, but no such tender was made. The respondent also claims that he could not safely pay the money to his client because there was a dispute between the children and her with reference to the amount which each child was to receive. This was a matter with which he was not concerned. He owed no duty to the children. The only duty he owed was to his client. The children had no legal claim against him, and if there was any money due them it was a financial obligation from Mrs. Smith and not from him. In his brief and argument he states several times that he was holding the balance subject to the orders of Mrs. Smith. Repeated demands were made by her for the money, and she enlisted the services of various attorneys and the Chicago Bar Association but without success. The petition to disbar was not filed until February 17, 1930, but the matter was called to the attention of the bar association several months before that time and letters were written

to the respondent. For four years he kept this money and persistently refused to account for it. When the matter was first called to his attention by the bar association he claimed that he could not pay on account of poverty. This was an admission that he had converted to his own use money which belonged to his client. The evidence amply sustains the finding of the commissioner as to this charge.

On the other charge against the respondent the evidence shows that in May, 1927, he told Ida E. Smith that he had a friend who wanted to borrow $500; that the friend would pay seven per cent and $25 bonus. He told her the loan was good and the interest would be greatly in excess of what she was then receiving. She gave him $475 and he gave her a judgment note dated June 3, 1927, due two years after date, purporting to be signed by J. J. Roland and endorsed by the respondent. The respondent made three payments of interest, and there is now due on the note the principal and the interest from January 1, 1929. It is charged in the information that this was a fraudulent subterfuge to secure this money and that the name of Roland signed to the note is in the handwriting of the respondent and that Roland is a fictitious person. The respondent testified that he had met Roland socially; that he had loaned him money on several occasions, and that he understood Roland was a traveling salesman but did not know for whom he traveled or what he was selling. He did not know where Roland lived at any time although he claimed to have known him for about ten years. Mrs. Smith was unable to secure either the payment of principal or interest, and she employed attorneys to locate Roland but they were unsuccessful in doing so. She and her attorneys made various demands on the respondent but received no money. Thereupon she made her complaint to the Chicago Bar Association and the information in this case was filed.

The commissioner states that he is satisfied from the evidence that Roland is a fictitious person, and that he is

strongly inclined to the belief that the signature of Roland was signed to the note by the respondent. The evidence shows that Mrs. Smith, in addition to the $1000 which she received from the sale of the Kentucky land, received $3000 insurance on her husband's life, received $400 from another transaction, and had a note for $2700 which was being paid in monthly installments. The respondent knew she had this money. It is apparent from the evidence that it was at his earnest solicitation that this loan was made to Roland. He claims that he merely made it as a safe investment and violated no confidence of his client in securing it, but the evidence does not sustain this contention. There is no reasonable explanation why the name of the respondent was endorsed on the back of this note. One handwriting expert testified that from the meager evidence presented to him he was of the opinion that the name "Roland" on the note was in the same handwriting as the endorsement of the respondent on the back of the note. Photostatic copies of the note are in the record, and the two initials "J.J." bear a strong resemblance. The remainder of the name does not bear such a strong resemblance. The respondent produced four witnesses who testified that they were acquainted with a man by the name of J. J. Roland. One of them testified that he swore Roland to an affidavit a short time prior to the filing of the information. Another witness testified that he saw the respondent in company with Roland a short time prior to the filing of the information. It is strange that if Roland is a real person and was in the company of the respondent a short time prior to the filing of this information and after the respondent knew that charges would probably be made against him, Roland was not produced in court to identify this transaction. If he had testified that he secured the money and that he signed the note no charge could be sustained against the respondent, unless it would be that he had induced his client, by reason of her confidence in him, to

loan her money to a person who was unable to pay or who refused to pay. The evidence shows that after she had exhausted all efforts to find Roland and get her money she employed three attorneys, who made efforts to locate Roland and to secure the money from the respondent. They were given various addresses in the city of Chicago but upon investigation did not find where Roland was located. They had various conferences with the respondent and wrote letters to him without satisfaction. When the evidence is considered as a whole it sustains the charge that the respondent obtained $475 from his client by fraudulent means, as charged in the information.

The rule is made absolute and the name of the respondent is stricken from the roll of attorneys of this court.

*Rule made absolute.*