THE PEOPLE *ex rel.* The Chicago Bar Association, Relator, *vs.* SAMUEL J. GRUSD, Respondent.

*Opinion filed June 18, 1925—Rehearing denied October 7, 1925.*

DISBARMENT—*misconduct is not justified by necessitous circumstances—restitution.* The fact that an attorney was in adverse circumstances and in great financial need cannot justify misconduct or dishonesty which is criminal in its nature, and the fact that restitution has been made will not preclude an inquiry into the moral and professional quality of the attorney's acts prior to and in connection with such settlement.

INFORMATION to disbar.

JOHN L. FOGLE, for relator.

DAVID JETZINGER, for respondent.

Mr. JUSTICE HEARD delivered the opinion of the court:

This is a proceeding for disbarment on an information filed by the People on the relation of the Chicago Bar Association. Answer having been filed thereto by respondent, the matter was referred to a master in chancery of the superior court of Cook county, as commissioner, to hear the evidence and report his conclusions of law and fact therefrom. The report of the commissioner was duly made and filed herein. No objections or exceptions were filed to the report either by the relator or respondent, and the matter is now submitted to this court upon such report and upon the motion of the relator to approve the report and make the rule absolute.

The evidence shows that respondent was born in Kovno, Russia, on October 15, 1883, came to this country at the age of twenty years, at once became an apprentice as a watchmaker and silversmith and that he worked at that trade until 1917. He attended night school from the time of his arrival in the United States, and by hard work and steady

application successfully passed the examination for admission to the bar in October, 1917, and shortly thereafter was admitted to the bar and from that time has continued to practice law in the city of Chicago. He was married on October 26, 1909, and is living with his wife and family in Chicago. He is the owner of the property in which he lives, having purchased it in 1921. It is worth about $15,000 and is encumbered for about $11,200. In 1923 his six-year-old son was taken with a severe inflammation of the hip bone and has since that time been confined to his bed. He was operated upon and was under the care of several physicians who treated him for that illness. The expense of the illness, in addition to respondent's other expenses, was greater than his income, and he was pressed for payment by doctors and other creditors and was laboring under considerable mental strain. He began to speculate on the Board of Trade in Chicago at the time when he was so pressed for money, after advising with some of his friends, who assured him that he could make considerable money by that method. On the first day of January, 1924, Samuel Savitski, a resident of the city of Chicago, who had been a client of respondent for some time, sold two lots to John Raslavicz and Bronsilava Raslavicz. A portion of the purchase price was paid in cash. The balance over the amount paid in cash was evidenced by twenty-four promissory notes secured by a trust deed, which notes aggregated $3650 and were numbered from 1 to 24, both inclusive. All the notes except No. 24 were for the sum of $150, No. 24 being for $200. The notes matured in from one to twenty-four months after date, respectively, in the order of their sequence and as numbered. All of the notes were executed by John and Bronsilava Raslavicz and were made payable to the order of themselves and were by them endorsed in blank and delivered to respondent, who was employed by and acted as the attorney for Savitski. At the conclusion of the transaction all of the notes remained in the hands

of respondent. On or about the 15th of January, 1924, while all of the notes still remained in his possession, he was called upon by his brokers to immediately pay a sum of money to further margin his purchases and sales of grain or in lieu thereof to deposit collateral to secure the same. Without the knowledge or consent of Savitski he took the notes numbered from 15 to 24, inclusive, (which notes by their terms would not be due until in the year 1925,) and delivered them to his brokers as collateral security to margin his account. Within a short time he prepared ten fictitious notes in the words and figures of those delivered by him to the brokers, signed to each of the substitute notes the names of John and Bronsilava Raslavicz, placed the fictitious notes with the original notes, and on January 28, 1924, delivered the notes, both fictitious and genuine, to Savitski without informing him of the substitution. The evidence shows that he put up the notes with his brokers with the probable belief that he would be able to recover them in a short time, and that he had intended to sell his property, and did offer it for sale, to obtain money to redeem the notes. On March 12, 1924, the brokers closed out his account, and the Raslavicz notes which had been deposited with them by respondent were sold by the brokers and all of the proceeds were applied to balance his account. The next day, after learning of the sale of the notes by the brokers, he advised Savitski that part of the notes delivered to him were fictitious, and immediately proceeded to raise money upon his real estate to purchase the genuine notes numbered from 15 to 24, inclusive, from the purchaser through the brokers' sale and at once delivered them to Savitski's attorney.

The commissioner found that during respondent's career as an attorney at law he was industrious and except for the Savitski matter his conduct was apparently proper and correct; that he served his clients satisfactorily, and that until this Savitski matter he enjoyed a good reputation as

an attorney at law in the city of Chicago; that the practice of law had been his sole occupation since his admission to the bar and that he had built up a modest practice; that upon complaint being filed with the grievance committee of the bar association, upon invitation to appear before the committee he frankly and truthfully related the facts concerning his preparation of the fictitious notes, the manner of his hypothecating the genuine notes to his own account and use, and all the other matters in connection therewith; that in this proceeding he stated the facts fully and truthfully and stated that he knew he had committed a wrong and knew at that time that he was committing a wrong, but that he was under serious pressure and thought that he could withdraw the notes from his brokers before his client, Savitski, would learn of it. The commissioner made no recommendation.

The facts in the case are clear and undisputed. The sole question to be determined is the effect to be given the full and complete restitution made by respondent before complaint. His misconduct, while he had no intention of cheating or defrauding Savitski, was criminal in its nature, and demonstrated that at the time of the commission of the offense he had lost the moral stamina and character necessary to entitle him to be held out to the world as a lawyer to whom clients might with confidence entrust their business and affairs. The fact that he was in adverse circumstances and in great financial need could not justify his acts. (*People* v. *Holt,* 279 Ill. 107; *People* v. *Kwasigroch,* 296 id. 542.) The fact that settlement has been made will not preclude an inquiry into the moral and professional quality of the attorney's acts prior to and in connection with such settlement. (*People* v. *Chamberlain,* 242 Ill. 260.) The weight to which restitution is entitled is to be determined by the facts in each case. If the court, after consideration of all the facts in the case, can be assured that the attorney has regained his good moral char-

acter and that he is now to be entrusted with his license as a lawyer, and is satisfied that no stress, however great, will cause him to again yield to temptation, then it may dismiss the rule. If it cannot be so determined the rule should not be dismissed. While in the present case respondent, by making restitution and by full and frank confession of his misconduct, has shown repentance, yet the record in this case does not warrant us in holding him out to the world as worthy of the confidence of clients.

The rule will therefore be made absolute.

*Rule made absolute.*