(No. 20617.—)

The People ex rel. The Chicago Bar Association, Relator, vs. Otto S. Hansen, Respondent.

*Opinion filed February 23, 1933—Rehearing denied April 13, 1933.*

John L. Fogle, for relator.

William Friedman, (James J. Barbour, of counsel,) for respondent.

Mr. Justice Stone delivered the opinion of the court:

This is an information filed in this court on leave, charging unprofessional conduct on the part of respondent. Two counts have been filed. The first charges the fraudulent conversion of money given to him for a specific purpose, and the second charges the fraudulent conversion of money and securities intrusted to him for investment and re-investment. The commissioner to whom the cause was referred has recommended discipline. Respondent has filed exceptions to that report and has argued them here. He has filed an abstract which does not set out the exhibits offered in evidence nor give their substance. It is in places unintelligible, and in other particulars fails to comply with the requirements of rule 14 of the Rules of Practice of this court requiring an abstract in narrative form as to evidence so as to clearly and concisely present the substance of the record. From it, and with the assistance of the original transcript, we deduce, however, the following facts:

Respondent was admitted to the practice of law in 1907 and has engaged in the practice of that profession since that time. Robert E. Hogan, an attorney in the city of Chicago, brought a suit on behalf of one Charles F. Grandt, a building contractor, against a school district at Wheeling, Illinois, and on September 17, 1929, collected thereby $3886.35, which he deposited in his personal bank account. After deducting his fees and charges he gave Grandt his check for the balance, amounting to $2960.35. A few days after that date Grandt deposited this check in his own bank, but it was returned to him marked "Not sufficient funds." A few months thereafter, Grandt, who did not succeed in procuring the money due him from Hogan, complained to the relator bar association. It appears that soon after giving the check to Grandt, Hogan became ill and left the city of Chicago for Florida. Respondent here, in Hogan's absence, took charge of the defense of the latter. It appears that shortly after Hogan left for Florida, and before Grandt's check was presented to Hogan's bank for payment, an office associate of Hogan named McCormick persuaded Hogan's book-keeper to cash certain drafts for him amounting to $2640 and thereby withdrawing from Hogan's account that sum. These drafts were deposited by Hogan's book-keeper to his account. The drafts received from McCormick were not honored by the banks on which they were drawn, with the result that there were not sufficient funds in Hogan's account to cover the check issued to Grandt. Grandt's complaint against Hogan was filed with the grievance committee of the relator bar association on December 3, 1929. On December 5, 1929, respondent herein received from McCormick the sum of $300 to pay on the Grandt claim. On December 6 following, respondent received from Mrs. Grace Hogan, mother of Robert E. Hogan, and on his behalf, bonds of the face value of $3000, which respondent offered to Grandt, with the $300 in cash turned over to him, and asked him to re-

lease the complaint against Hogan, which Grandt refused
to do. These bonds were then returned to Mrs. Hogan.
On December 10 following, respondent received from one
Cleary the sum of $500 on behalf of Hogan, and on De-
cember 22 received $1000 on behalf of Hogan in the form
of a draft payable to his mother. Later, on March 25,
1930, he received on behalf of Hogan the sum of $1520
from Hogan's mother, making a total of $3320 received
by him in the discharge of the claim against Hogan. In
January, 1930, Hogan returned from Florida and talked
with respondent, who told him that he (Hogan) was in
great trouble over the checks; that a complaint had been
made against Hogan with the relator bar association and
a hearing had thereon; that he, respondent, thought he had
taken care of it, but that the money, however, would have
to be paid over to Grandt at once. He told Hogan he had
received some money from McCormick and some from the
mother and brother of Hogan and that he would make
arrangements to take care of the matter, and that just as
soon as the balance was paid it would be disposed of and
that Hogan need not worry about it. Hogan thereupon re-
turned to Florida. Late in March, 1930, Hogan returned
to Chicago and learned from Grandt that he had not re-
ceived the money that had been turned over to respondent.
Hogan thereupon saw respondent and asked him if he had
received all of the money to which Grandt was entitled,
and respondent replied that he had but had not settled
with Grandt but that he would do so in thirty days. Such
payment not having been made, an information was on
April 12, 1930, filed against Hogan in this court. It fur-
ther appears from the evidence that on April 1, 1930, re-
spondent persuaded Grandt to accept his post-dated check
for $1500 and his personal note for $1920 in full settle-
ment of all claims that Grandt had against Hogan, includ-
ing certain items of expense and costs to which Grandt had
been put. Grandt thereupon signed a receipt stating he

had received from respondent the sum of $3420 in full payment, specifying cash $1500 and a note for $1920. The $1500 check, which was dated as of April 5, 1930, was deposited by Grandt and returned by the bank on which it was drawn owing to a lack of sufficient funds. Respondent thereafter gave Grandt his check dated May 21, 1930, for $500, which was also returned with a memorandum, "Account closed." At various times prior to September 1, 1930, he made payments to Grandt, and on that date gave Grandt his judgment note for $1700 due October 1, 1930. Certain small payments were made by respondent on this note until the same was in March, 1931, put in judgment in the sum of $1684.50.

Respondent's defense is that he was not representing Hogan as an attorney; that his use of the money which was to be paid to Grandt was with the latter's consent, and that Grandt knew that respondent had the money at the time he accepted the check and note and gave a receipt therefor.

The record shows that Grandt was called as a witness for relator on September 9, 1931, and testified that he was not told, at the time of the settlement with respondent on April 1, 1930, that respondent had received sufficient funds to settle the Hogan matter and did not know that such was the fact. He also testified that he did not consent that respondent keep those funds for his own use. He was recalled by respondent after February 10, 1932, on which date an order for re-reference for taking further testimony was granted on respondent's motion. This testimony of Grandt shows the satisfaction of the judgment in the sum of $1684.50 against respondent. He changed his testimony as to his knowledge on April 1, 1930, that respondent had received from Hogan's relatives and friends the amount of money necessary to pay Hogan's liability. Questioned by the commissioner, he, however, stated that he did not know at the time of his settlement with respondent that the lat-

ter had received all the money. It is evident that Grandt was recalled not only to show a payment of the judgment against respondent but in an endeavor to get him to change his testimony in a matter in which it seems difficult to believe he could have been mistaken in the first instance. That effort was not entirely successful, however, and has in it little to commend respondent as an upright practitioner. It is evident from the evidence in this case that Grandt was not informed that respondent had received the amount necessary to pay Grandt's claim against Hogan, and that Hogan's friends and relatives had no intimation that respondent expected to use the money for his own purposes and to give Grandt a check for part and his note for the balance. It is also evident from the record that respondent was representing Hogan as his attorney. He argues as a defense to the charge of misconduct that he had rendered bills to Hogan in various matters for legal services which had not been paid. He admitted in his testimony, however, that he had no right to retain any of the money so paid him for Hogan or to apply any part of it on any claim which he might have against Hogan.

Cleared of all immaterial matters, the facts in the case come down to simply the matter of respondent's having received funds necessary to discharge Grandt's claim against Hogan, and, having converted them to his own use, later attempting to pay Grandt with checks that were not honored, and with his note, which was not paid until after judgment thereon and after the hearing before the commissioner. The wrongful conversion by an attorney at law of funds placed in his hands for a specific purpose is a direct violation of his duties as an attorney and requires discipline. (*People* v. *Tracey,* 314 Ill. 434; *People* v. *Kwasigroch,* 296 id. 542; *People* v. *Stonecipher,* 271 id. 506; *People* v. *Vollintine,* 264 id. 586; *People* v. *Gilbert,* 263 id. 85.) The fact that restitution has been made after complaint will not absolve the respondent nor preclude in-

quiry into the moral or professional character of his acts prior to and in connection with such settlement. *People v. Grusd,* 318 Ill. 44; *People v. Tracey, supra; People v. Chamberlain,* 242 Ill. 260.

The charge under the second count is, that one Mary E. Wirick, whose son married a sister of respondent, was the owner of certain farm mortgages, and on or about June 1, 1922, following respondent's suggestion that they be converted into cash, sent them to him, together with $2000 in cash, for the purpose of selling the mortgages and purchasing a pottery plant for her two sons. Later, changing her mind, she directed that respondent purchase bonds with the money. It appears that respondent negotiated for some bonds. Her testimony, which is not clear, tends to show that at different times she had possession of the bonds, later returning them to respondent. The record does not disclose with clarity just what, if any, authority respondent had to deal with these bonds or their proceeds. The commissioner finds, however, and we are of the opinion, that the record justifies the finding respondent did dispose of the bonds, and when called upon for payment could not pay Mrs. Wirick the money because he had used it. He paid various sums from time to time until she later consulted other attorneys, who filed a suit in trespass against him on the ground of fraud. The record shows that by stipulation a judgment was on April 28, 1926, rendered against respondent in that suit for $4196.07. Respondent testified that complete settlement had been made of this matter since the hearing of relator's evidence on that count. Owing to the uncertainty of Mrs. Wirick's testimony we are unable to say that he used her funds without her authority, though his consent to a judgment in trespass against him would so indicate. We are of the opinion, however, that the charge of the first count is fully sustained by the record in this case.

The rule will therefore be made absolute against respondent and his name stricken from the roll of attorneys.

*Rule made absolute.*