(No. 22043.—
IN RE EDWARD B. ZAHN, Attorney, Respondent.

*Opinion filed April 21, 1934.*

JOHN L. FOGLE, *amicus curiæ.*

MICHAEL L. IGOE, for respondent.

Mr. JUSTICE DEYOUNG delivered the opinion of the court:

The board of managers and the committee on grievances of the Chicago Bar Association, as commissioners, pursuant to the order of this court entered on April 21, 1933, filed a report and also a supplemental report of their conclusions of fact and law concerning a complaint charg-

ing unprofessional conduct on the part of Edward B. Zahn, a member of the bar of this State. The commissioners found the respondent guilty as charged and recommended his suspension from the practice of law for the period of two years and thereafter until re-instated by the order of this court. The respondent filed exceptions to the report and the cause is submitted upon the record and proofs.

Edward B. Zahn was licensed as an attorney and counselor at law on April 6, 1910, and since has been engaged in the practice of his profession in the city of Chicago. In November, 1930, Alva J. Lovewell retained Zahn, the respondent, to foreclose a trust deed in the nature of a mortgage securing the payment of an indebtedness of approximately $6000. The respondent filed a bill for that purpose in the circuit court of Cook county. He prosecuted the suit to a point beyond the sale pursuant to the decree of foreclosure, but failed to present the master's report of the sale for approval and confirmation. The sale occurred on November 12, 1931. Prior thereto, Lovewell, on four different occasions, had paid the respondent sums of money aggregating $550. The respondent fixed his fee as solicitor at $700, the fees and expenses of the master in chancery amounted to $299.21, and the court costs were taxed at $26.50. A statement for $1025.71, the total of these three items, was rendered to Lovewell. On December 7, 1931, the respondent received from Lovewell the additional sum of $450, upon which they had agreed in final settlement of the costs, solicitor's fees and the fees and expenses of the master. At that time $224.21 was owing to the master, the respondent having paid him $75 on the day of the sale.

The master was not paid and during the ensuing three months, he sent three letters and a statement of account to the respondent requesting payment of the remainder of his fees and expenses. Lovewell was informed of the respondent's failure to pay the master in March, 1932, when

he received a bill from that officer. Thereafter Lovewell called upon the respondent several times to obtain satisfaction of the master's claim. The respondent ignored his client's requests and the latter then consulted another attorney whose efforts to compel the respondent to pay the master the sum owing to him likewise proved unavailing. On August 5, 1932, Lovewell filed with the committee on grievances of the Chicago Bar Association his complaint charging the respondent with the misappropriation of the money given to him for the purpose of paying the master's fees and disbursements. The respondent was twice notified of the complaint and requested to answer it. Notices of the hearings before the committee were also sent to him. He neither answered the complaint nor attended the hearings. On April 15, 1933, however, the respondent paid the master $50 on account, leaving $174.21 of his claim unsatisfied.

After the entry of the general order of April 21, 1933, appointing commissioners to investigate practices of members of the bar which tend to defeat the administration of justice or to bring the courts and the legal profession into disrepute, the complaint made by Lovewell was referred to the board of managers and the committee on grievances of the Chicago Bar Association, as such commissioners. A statement of the complaint was delivered to the respondent on April 27, 1933, and he was directed to file a written answer with the commissioners within ten days. The respondent failed to answer the complaint and the commissioners notified him that evidence to sustain it would be heard on May 11, 1933. At the hearing both the complainant and the respondent appeared. The former testified in support of his complaint and the latter admitted the receipt and the conversion to his own use of the money entrusted to him by Lovewell for the payment of the master's fees and disbursements. The respondent stated, in attempted mitigation of his conduct, that in October, 1931,

a bank, in which he kept two accounts, one personal and the other as trustee, closed its doors; that thereafter other clients threatened to report him to the committee on grievances of the Chicago Bar Association unless he refunded money belonging to them which he had deposited in that bank; that he applied to the satisfaction of their demands the money Lovewell gave him; that at the time he had three partition suits pending, one of which was ready for a decree of sale and the other two for references to masters in chancery; that he expected shortly to prosecute these suits to completion and out of the fees for services he had rendered in them, to pay the sum owing to the master for his services and disbursements in Lovewell's foreclosure suit; that other clients who were indebted to him were unable to pay because they had lost money in closed banks and that he, the respondent, opened a personal account in a second bank which, because of insolvency, also ceased to do business.

The commissioners, on May 13, 1933, furnished the respondent with a copy of their report, and notified him that he might file objections thereto within ten days. He filed no objections but caused to be presented to the commissioners a petition for permission to offer additional proofs. In this petition he set forth the numbers and the titles of the three partition suits and the court in which they were instituted. He further made allegations concerning the closed banks which conformed to his testimony before the commissioners and he added the statement that since the hearing on May 11, 1933, Lovewell had received the certificate of sale from the master in chancery; that the report of the sale had been approved and that the master's deed was ready for delivery. The commissioners denied the respondent's petition. Their supplemental report concludes with the statement that it was upon the assumption of the truth of the evidence so tendered that they were induced to recommend discipline rather than disbarment.

The contentions of the respondent are that the conversion was merely technical, and that the punishment recommended is unduly severe.

Attorneys at law admitted to the bar of this State are officers of this court. (*People* v. *Czarnecki*, 268 Ill. 278; *People* v. *Payson*, 215 id. 476). The relation of the court and its attorneys to the people is one of high responsibility and involves on the one hand complete trust and confidence, and on the other absolute fidelity and integrity. (*People* v. *Payson, supra*). The wrongful conversion by an attorney at law of funds placed in his hands for a specific purpose is a flagrant violation of his duty and requires discipline. (*People* v. *Hansen*, 352 Ill. 144; *People* v. *Ladouceur*, 347 id. 454; *People* v. *Hoering*, 317 id. 390; *People* v. *Tracey*, 314 id. 434; *People* v. *Kwasigroch*, 296 id. 542; *People* v. *Stonecipher*, 271 id. 506; *People* v. *Vollentine*, 264 id. 586; *People* v. *Gilbert*, 263 id. 85). Financial misfortune and adverse circumstances afford no justification for such conduct. (*People* v. *Grusd*, 318 Ill. 44; *People* v. *Kwasigroch, supra; People* v. *Holt*, 279 Ill. 107; *People* v. *Pattison*, 241 id. 89). The fact that restitution is made after a complaint has been filed will not absolve an attorney nor preclude inquiry into the professional propriety of his acts prior to and in connection with the settlement made. *People* v. *Hansen, supra; People* v. *Grusd, supra; People* v. *Chamberlain*, 242 Ill. 260.

The uncontroverted evidence shows that on and prior to December 7, 1931, the respondent not only had been compensated for all the services required of him as the complainant's solicitor in the foreclosure suit, but he had also been entrusted with money to pay the fees and disbursements of the master in chancery in that suit. Repeated efforts thereafter by the master, the complainant and an attorney acting in the latter's behalf to induce the respondent to pay the master the sum of money owing to him were of no avail. Eight months elapsed, during

which period the respondent failed to apply the money to the specific purpose for which it had been given to him, before complaint was made to the grievance committee of the Chicago Bar Association. Requests by that committee to answer the complaint and notice of hearings were ignored by the respondent. Sixteen months after he received $224.21 for immediate payment to the master, he paid him $50. The latter's claim was thereby reduced to $174.21, but no part of that sum has been satisfied. Although the respondent had been fully and generously paid for all the services required to prosecute the foreclosure suit to its termination, including the approval of the master's report of sale, that step was not taken until after the commissioners appointed by this court had made their report sustaining Lovewell's complaint. Hence, during the period of eighteen months, the respondent, by converting to his own use the money he should have paid the master, caused the report and the certificate of sale to be withheld and the property rights of his client to be imperiled.

It was the respondent's obvious duty promptly to pay to the master the money entrusted to him for that purpose. The failure in October, 1931, of the bank in which the respondent was a depositor could not justify the misapplication of the money he received two months later from Lovewell, his client, for payment to the master. The respondent's dire financial necessities could not exonerate his misapplication of that fund. The fact is that he deliberately converted to the discharge of his personal obligations money which his client placed in his hands for a specific purpose. Such a conversion is willful and indicative of fraudulent intent. A mere intention to re-pay or a hope of subsequently replacing the money diverted does not render the conversion less fraudulent.

The respondent has been a member of the bar for twenty-four years and no other charges have been preferred against him. The single dereliction charged and

proved constitutes a violation of his duties and obligations as an attorney and counselor at law and demonstrates an unwholesome perspective of his responsibilities as an officer of this court. The ends of justice, however, under the circumstances disclosed, will be satisfied by a suspension. The respondent will therefore be suspended from practice as an attorney and counselor at law within this State for the period of two years from the filing of this opinion.

*Respondent suspended.*