(No. 21866.—

THE PEOPLE *ex rel.* The Chicago Bar Association, Relator, *vs.* JAMES D. TEMPLEMAN, Respondent.

*Opinion filed April 17, 1936.*

RUSSELL J. McCAUGHEY, for relator.

J. W. TEMPLEMAN, for respondent.

Mr. JUSTICE WILSON delivered the opinion of the court:

At the February term, 1933, an information in the name of the People of the State of Illinois, on the relation of the Chicago Bar Association, was filed in this court charging James D. Templeman and Phillip E. Miller with unprofessional conduct as attorneys and counselors at law. Upon his own motion Miller's name was stricken from the roll of attorneys on April 13, 1933. Templeman answered the information and the cause was referred to a commissioner who reported the evidence with his conclusion that the respondent Templeman should be disbarred. The respondent filed objections to the report which the commissioner, in a supplemental report, overruled. The objections have been ordered to stand as exceptions and upon the record as thus made the cause is submitted.

James D. Templeman, the respondent, was licensed to practice law in this State on October 16, 1924. For seven years thereafter he practiced his profession in Chicago. In 1928 the respondent rented desk space in his office to Phillip E. Miller. The latter was the executor of the will of George Glauner, deceased, and retained the respondent to represent him in the matter of the probate of Glauner's estate. The inventory filed by Miller on September 24, 1928, disclosed that personal property of the value of more than $13,000 had come into his hands as executor. In April, 1930, the heirs of George Glauner filed a petition in the probate court

of Cook county seeking the removal of Miller as executor. Miller resigned and confessed in open court that the assets of the estate were dissipated. On May 2, 1930, letters of administration *de bonis non* were issued to Fred B. Houghton and Walter A. Olsen. Thereafter Miller made his final accounting which disclosed that the assets of the estate were $13,976.82 and that the disbursements were $5915, resulting in a shortage of $8061.82. The same day, the administrators filed a petition conformably to the provisions of sections 81 and 82 of the Administration act to discover assets and prayed for an order citing the respondent to appear before the probate court and submit himself and his records to an examination. The administrators charged in their petition that the respondent, as attorney for the executor, had received from him more than $3000 of the assets of the estate which he had converted to his own use. On May 5, 1930, a citation issued to the sheriff commanding him to cite the respondent to appear before the probate court on May 16, 1930. Although personally served with process the respondent ignored the citation and did not appear for questioning on May 16. In consequence of his failure to appear an attachment against him issued out of the probate court on July 11, 1930. The sheriff returned it executed by bringing the respondent into court on July 22, 1930. He admitted having received certain moneys and was directed to account therefor. After extended hearings an order was entered on February 16, 1931, reciting, among other things, that the respondent appeared in person before the probate court and rendered an account of the assets of the estate received by him and the payments made by him to the executor, for the use of the estate; that his account was correct except as to three items for attorney's fees, aggregating $700; that the respondent, however, had received $2340 in moneys of the estate on thirteen different occasions from October, 1928, to and including August, 1929, for which he had not accounted. By

the order entered on February 16, the respondent was directed to pay over to the administrators *de bonis non* with the will annexed the sum of $3040 within ten days.

The respondent failed to obey this order and on March 30, 1931, the probate court entered another order finding him guilty of contempt for wilfully refusing and failing to turn over the sum of $3040 as commanded and ordered him committed to the county jail until he paid it, but not for a period longer than six months, or until discharged by due process of law. The respondent was taken into custody by the sheriff of Cook county following the entry of the order of March 30. After his commitment to jail for contempt, he filed a petition for a writ of *habeas corpus* in the criminal court of Cook county. The writ was denied and the proceeding dismissed. The respondent then prosecuted a writ of error from the Appellate Court for the First District to review the order of March 30, 1931, in the contempt proceeding. Upon his application the writ was made to operate as a *supersedeas* and he was admitted to bail upon entering into a recognizance in the sum of $4000, with sureties approved by the Appellate Court. Subsequently, that court affirmed the order of commitment of March 30, 1931. (*People* v. *Templeman,* 265 Ill. App. 369.) The respondent next filed a petition for a writ of *certiorari* in this court. His petition was denied on June 24, 1932. Following the denial of *certiorari* the *mittimus* previously issued was placed in the hands of the sheriff. Numerous unsuccessful attempts to serve the *mittimus* were made by the sheriffs of Cook and Sangamon counties. Houghton, an attorney, and one of the administrators, testified that the sheriffs searched for the respondent under his direction. The search continued, according to Houghton, up to the day he testified at the hearing before the commissioner.

The respondent did not appear at the hearing but caused a *dedimus* to issue out of this court to a commissioner in

Kansas City, Kansas, to take his deposition at that place. He testified that at the hearings in the probate court he presented all of the matters in regard to his transactions with Miller and produced his books and records. He admitted that at one of the hearings before an assistant to the probate judge the administrators brought in a number of checks drawn by Miller on the estate's banking account, payable to the order of the respondent and endorsed by him, and that these checks were drawn during a period extending over several months. To establish his claim that Miller actually received the money on them, he testified that he endorsed the checks for Miller's convenience so that the latter might cash them at another bank. The administrator Olsen testified, however, that in the proceedings in the probate court the records of the drawee bank showed that each of the thirteen checks previously mentioned as drawn on the funds of the estate of George Glauner, deceased, was deposited by the respondent in his personal account in the same bank. The respondent did not controvert Olsen's testimony, but added that Miller gave him an affidavit and a release in full for all bonds or money passing through his hands. These documents, he stated, were filed in the probate court. The respondent's testimony in this respect was corroborated by Houghton who testified that he saw the statements, and by Olsen who said that the respondent produced them in court. The affidavit, dated January 30, 1930, and signed "Phillip E. Miller, Executor," states that the respondent was not, and never had been, indebted to the estate of George Glauner "in any amount or any reason whatsoever." The release, undated, merely declares that Miller absolves the respondent from any claims that might arise, or which he had as executor.

The respondent makes several contentions. The first which requires consideration is that this court lacks jurisdiction to entertain the present proceeding because the information was not sworn to. The information in this case

was filed by the Chicago Bar Association and signed by its president and its secretary. The rules of this court do not require that the information to disbar be sworn to in such cases. *In re Casey,* 359 Ill. 496; *People* v. *Briggs,* 330 id. 339; *People* v. *Story,* 265 id. 207.

Other contentions made by the respondent attack the order of the probate court of March 30, 1931. These contentions with respect to the jurisdiction of the probate court to enter the order finding the respondent in contempt are practically the same as those advanced in *People* v. *Templeman, supra,* and decided adversely to the respondent. It is sufficient to observe that the Appellate Court found that the probate court had jurisdiction of the subject matter and of the person of the respondent in the contempt action. A further review of the record was sought in this court and denied. The order of the probate court holding the respondent guilty of contempt for converting to his own use the property of the estate of George Glauner, deceased, is thus final and conclusive and, hence, immune from collateral attack.

The respondent insists that the findings and conclusion of the commissioner are not sustained by the evidence. Attorneys at law admitted to the bar of this State are officers of this court. (*In re Casey, supra.*) The relation of the court and its attorneys to the people is one of high responsibility and involves, on the one hand, complete trust and confidence, and on the other, absolute fidelity and integrity. (*In re Zahn,* 356 Ill. 283.) Defiance, by an attorney representing the executor or administrator, of orders of the probate court to turn over money in his hands to an administrator appointed by it, constitutes a flagrant violation of his duty sufficient to warrant his disbarment. *People* v. *Salomon,* 184 Ill. 490.

The evidence conclusively shows that the respondent converted $3040 belonging to the estate of George Glauner, deceased, to his own use. The respondent maintains, how-

ever, that the abstract of the record of the contempt proceeding, filed by him on his application for *certiorari* in this court, affords the sole basis for the findings against him. He accordingly invokes the rule announced in *People* v. *Amos,* 246 Ill. 299, to the effect that the record of. a civil suit against an attorney, in which only private rights are represented, may be used as a basis for a rule to show cause why an attorney should not be disbarred, but that the record itself is not admissible against him in the disbarment proceeding, and that if such record constitutes the only basis for the commissioner's findings against the attorney the rule to show cause must be discharged. The authority invoked cannot avail the respondent, as the conclusion that he misappropriated funds belonging to the estate rests not only upon the record in the contempt proceeding but also upon the testimony of two witnesses for the relator, Olsen and Houghton. Moreover, the conclusion is fortified by the respondent's admissions with respect to the misapplication of the assets of the estate. It is not the order of contempt, alone, which justifies discipline, but the commission of the acts upon which the order was predicated.

Our attention is directed to the purported release given the respondent by Miller. We note that it is undated and that the affidavit stating the respondent did not owe and never had owed the estate of George Glauner, deceased, any money, is dated prior to the entry of the order which the respondent now attempts to collaterally assail. He produced both the release and the affidavit at the hearings in the probate court but was nevertheless found to owe the estate $3040 and directed to pay this sum to the administrators. His testimony that Miller actually received $2340 of this money rests solely upon his own assertion that he gave the money to Miller and that the latter executed the release. The respondent did not produce any receipts or render an accounting to support this position. In an anal-

ogous situation this court, in *People* v. *Pace,* 354 Ill. 111, said: "Evidence is lacking that he did not take receipts, or, if taken, that they were subsequently destroyed or lost. Under the circumstances, we cannot indulge in a presumption that receipts were not taken. * * * In a case of this nature the burden is upon the attorney to prove or disprove."

From the evidence it also appears that the respondent testified that he was allowed $700 as attorney's fees. In his accounting in the probate court he claimed this sum for professional services rendered and admitted that he had previously paid himself this amount from the proceeds of his unauthorized sale of certain securities belonging to the estate. The abstract which he filed in this court when he sought a writ of *certiorari* recited, as part of the record of the probate court, the order which disallowed the fees of $700 and required their return. By his own admission, therefore, the respondent has misappropriated at least $700, no part of which he has re-paid.

The record discloses that the respondent did not elect to appear in person in this State at the hearings in this proceeding. In compliance with his request, his deposition was taken in Kansas City, Kansas. From the deposition taken there it affirmatively appears that the respondent did not reside in, nor contemplate establishing residence in, Kansas. He claims to have been practicing law in Springfield, Illinois. We observe, however, that although a *mittimus* for the arrest of the respondent has been in the hands of the sheriff of Sangamon county since 1932 he has successfully avoided apprehension. The repeated wrongful acts by the respondent occurred over a considerable period of time. His derelictions are aggravated by his long continued evasion of process and by flaunting defiance of the orders of courts. By his conduct the respondent has forfeited his right to bear the license of this court to practice law and thereby induce persons requiring the services of

an attorney to repose confidence in him and to entrust their property and interests to his care.

The report of the commissioner is confirmed. The rule will be made absolute and the name of the respondent stricken from the roll of attorneys of this court.

*Rule made absolute.*