(No. 25905.— )
In re George G. Both, Attorney, Respondent.

*Opinion filed February 14, 1941—Rehearing denied April 8, 1941.*

Charles Leviton, *amicus curiae.*

Decker & Golden, and Ode L. Rankin, for respondent.

Mr. Justice Wilson delivered the opinion of the court:

A report filed by the board of managers and the committee on grievances of the Chicago Bar Association, as

commissioners of this court under rule 59, (370 Ill. 63,) concerning a complaint charging George G. Both with unprofessional conduct, recommended his disbarment. Respondent has filed exceptions to the report and the cause is submitted upon the record and proofs.

George G. Both, the respondent, licensed as an attorney on February 15, 1923, has since been engaged in the practice of his profession in this State and, during the period here involved, in Chicago. From the record it appears that Helen Duckett's first transaction with the respondent occurred in 1935, when she retained him to represent her upon a claim against a decedent's estate. March 28, 1936, respondent borrowed from her $750 and executed his judgment note for $825, including a premium of $75, payable to her order on demand, with six per cent interest. He asserted that the actual loan amounted to only $250, against which were to be credited anticipated fees. He averred first that the remaining $500 constituted an advance upon accrued fees, and later that it was a loan secured by the fees. April 7, 1939, complainant, having received no payment on the note, caused judgment by confession to be entered upon it. Respondent has made no attempt to vacate the judgment.

July 11, 1937, respondent represented to Helen Duckett that John Zardt, another client, needed $1600 in order to complete the leasing of a hotel and the purchase of its furnishings. Upon the promise that she would receive an $1800 chattel mortgage on the furnishings, with six per cent interest, she gave respondent the sum first mentioned. Thereafter, he assured her the chattel mortgage was in his possession and offered various excuses for delay in its payment. Respondent testified that he never delivered the chattel mortgage nor had it recorded, but held it pending execution of a three-year lease of the hotel intended as collateral security. He further stated that in February, 1939, when Helen Duckett demanded her money, he sold the

chattel mortgage, of which he had no copy, to another client for $1600, making a substitution of mortgagees therein. The money thereby obtained, he asserted, was delivered to the attorney with whom Zardt had been negotiating, although the purported lease does not appear to have been procured. However, respondent did not return her $1600 to Helen Duckett.

From February 26, 1938, respondent obtained from Helen Duckett $5381.50 consisting of $3,000 given him on the date mentioned for the purchase of a $3500 mortgage against premises located at 4702 West Fulton street, Chicago, but described in respondent's receipt as being on Kilpatrick street; $1800 on June 13, 1938, for the payment of general taxes against the same premises; and $581.50 deposited with him January 13, 1939, for the purchase of a deed to the equity therein. Following receipt of the $3000 on February 26, 1938, respondent caused Helen Duckett to believe, and so affirmed at the hearing, that he bought the mortgage in April, 1938, from George Nasser, also his client. Evidence adduced by the complainant disclosed that on June 23, 1938, respondent offered to purchase the mortgage from Arthur A. Marquart, for $2250, depositing $750 in earnest money, of which $165 was to be retained in the event of his failure to perform. Respondent admitted he made this offer in behalf of Nasser, who lost the $165 by failing to complete the purchase. It further appears from the record that in December, 1938, Marquart was endeavoring to sell the mortgage for $2500, and in May, 1939, authorized its sale, later consummated, for $2400. The respondent made no effort to deny this evidence.

The $1800 to pay general taxes against the premises was obtained by respondent from Helen Duckett June 13, 1938, only ten days before respondent offered to purchase the mortgage from Marquart. This money was not used for the intended purpose nor returned to Helen Duckett.

Respondent explains that he was delaying until she obtained the title, when he intended to file a proceeding to enjoin collection of the taxes in order to save part of the penalties.

Respondent received the $581.50 on January 13, 1939, upon his express promise to pay $600 for a deed to the Fulton street premises, of which sum he was to advance $18.50. In his testimony he persistently asserted that he paid the sum mentioned and claimed a loss of $18.50 by reason of the advance made. Subsequently, Karl C. Loehr, attorney for the seller, testified that he received only $500 and produced a copy of a receipt for that sum given respondent when the sale was consummated. The latter did not attempt to refute this evidence.

Helen Duckett testified that she could have obtained the equity for $600 as early as the summer of 1938, but that respondent advised against it. Respondent explained that Patsy Danno, the original owner, had contracted on March 15, 1938, to exchange the premises for Texas property of Lloyd M. Bentsen and that he had felt a better price could be arranged with the latter, a non-resident. He denied that after the exchange had been completed in August, 1938, Bentsen offered to sell for $600, and stated that the offer was for $1000, the same as Danno had originally made. In support of this explanation, respondent claimed that he told Helen Duckett of the exchange contract in January, 1938, when, he asserted she was discussing the purchase of the mortgage with Danno, his client. Conversely, he denied that Danno was his client or that he knew of the contract before March 15, 1938.

From March 1, 1939, George E. Billett, an attorney retained by Helen Duckett, repeatedly demanded that respondent deliver his client's documents. On the date mentioned, respondent represented in a telephone conversation that he had in his possession the chattel mortgage which he later asserted had been sold. Billett's letters of March 4, and March 18 were not answered. March 25, when Billett

and Helen Duckett unexpectedly called at his office, respondent avowed that she was not indebted to him in any amount and promised delivery the following week. A final demand on March 31 provoked no response. Respondent contends that he was too fully occupied with other matters to answer or account and also that he was awaiting an adjustment of his fees and expenses. April 19, 1939, the complaint of Helen Duckett was filed with the Chicago Bar Association. Respondent answered the complaint and filed a rejoinder to the complainant's reply. Following the filing of an action of accounting against him in the circuit court of Cook county, respondent delivered the deed, mortgage and other title papers to the Fulton street property to Billett on November 1, 1939. In an amended and supplemental answer filed December 4, 1939, respondent averred his readiness to pay $2647.40, the amount he claimed was owing Helen Duckett. He later testified that of the funds deposited with him he had spent only $600, which he considered his proper fee, and had kept the unused balance in a specially constructed desk drawer. In an agreement dated December 14, 1939, the day the hearings commenced, respondent acknowledged a total indebtedness to Helen Duckett of $4333.75 and she allowed him $337.75 for his fees, costs and expenses. Being able to make only a partial payment of $2000, he delivered deeds to other property as security for the balance of $1996.

The respondent contends that he occupied a business rather than a professional relationship to Helen Duckett throughout the transactions in question and, in particular, that with reference to the purchase of the mortgage and title to the Fulton street property they were engaged in a joint enterprise. We deem it sufficient answer to these contentions that they are diametrically opposed to respondent's every assertion in his pleadings and his testimony, which rested upon the assumption that he was entitled to fees for his services as an attorney.

The respondent insists the findings and conclusions of the commissioners are not sustained by the evidence. Attorneys at law admitted to the bar of this State are officers of this court. (*People* v. *Templeman*, 363 Ill. 152; *In re Casey*, 359 id. 496.) The relation of the court and its attorneys to the people is one of high responsibility, involving on the one hand complete trust and confidence and on the other absolute fidelity and integrity. (*In re Zahn*, 356 Ill. 283; *People* v. *Payson*, 215 id. 476.) The wrongful conversion by an attorney of funds placed in his hands for a specific purpose is a flagrant violation of his duty sufficient to warrant his disbarment. (*People* v. *Templeman, supra; People* v. *Ladouceur*, 347 Ill. 454; *People* v. *Tracey*, 314 id. 434.) Restitution made after a complaint has been filed will not absolve an attorney nor preclude inquiry into the professional propriety of his acts prior to and in connection with the settlement. *People* v. *Hansen*, 352 Ill. 144; *People* v. *Grusd*, 318 id. 44; *People* v. *Chamberlain*, 242 id. 260.

Irrespective of whether he actually procured the chattel mortgage and later sold it, the significant fact is that respondent did not return the $1600 he claims to have been holding in escrow. The uncontroverted evidence further discloses that respondent attempted to purchase the mortgage against the Fulton street property for less than $3000 and it appears that he finally succeeded in so doing. He offered no proof, other than his contradictory testimony, of the price paid. In originally attempting to purchase for the lesser amount, it is conceded that he acted in behalf of George Nasser, another client whose interests were adverse to those of Helen Duckett. It must also be admitted that he fraudulently obtained $1800 from her, purportedly for the payment of taxes against property in which he secretly was preventing her from obtaining an interest. In the light of his assertions that the purchase price for the deed to the premises was $600, the positive and undisputed evi-

dence that respondent paid only $500 conclusively demonstrates an undisclosed profit. The irresistible conclusion from this evidence is that respondent converted his client's funds and made secret profits. Further discussion of his confusing, contradictory and palpably false testimony is unnecessary. Respondent's partial restitution, leaving $1996 unpaid, was made on the day hearings started, prior to the disclosure of his private gains.

The record discloses not one but a series of fraudulent transactions whereby respondent procured and, through the betrayal of her trust and confidence, converted Helen Duckett's money, and proclaims that he acted to her detriment not only for his personal gain, but for adverse interests of another client. The license of this court to practice law, whereby persons desirous of the services of an attorney may be induced to entrust their property and interests to his care, cannot longer be permitted to the respondent.

The report and recommendations of the commissioners are confirmed. The respondent, George G. Both, is disbarred from the practice of law and his name is ordered stricken from the roll of attorneys of this court.

*Respondent disbarred.*