(No. 29793.—
In re Irving S. Roth, Attorney, Respondent.

*Opinion filed September 18, 1947—Rehearing denied Nov. 17, 1947.*

CHARLES LEVITON, *amicus curiae.*

JOSEPH B. GILBERT, and HERBERT M. WETZEL, both of Chicago, for respondent.

Mr. JUSTICE STONE delivered the opinion of the court:

A report filed by the Committee on Grievances of the Chicago Bar Association, sitting as commissioners of the court under Rule 59, relates to an investigation of charges of unprofessional conduct on the part of the respondent, Irving S. Roth. The commission has reported the evidence and recommends disbarment and respondent has filed exception to that report.

Six separate complaints, which in their inception date from November 11, 1939, to April 13, 1944, were investigated by commissioners and conclusions on them reached. One Jessie Wojtock, complained that respondent took $50 from her to institute a divorce proceeding for her, which he did not do. The commissioners heard evidence and reported that, because the evidence was in direct conflict, it did not present required proof.

Charles Lybrink charged that respondent received money to institute bankruptcy proceedings but filed none. The commissioners on hearing find this charge proved, as they also do regarding the complaint of Elizabeth Trelford, who charged that respondent cashed a check given her and her husband in settlement of a personal injury, and refused to turn it over to her until after complaint was filed before the grievance committee.

The complaint of a Mrs. Bradley arose out of respondent's representing her in the sale of a truck on a conditional sales contract, the later damaging of the truck and expense of repair, and the loan to her of $500 on the truck. She charged that respondent went to the bank with her when she got the money, took it out of her hands for the purpose, as he said, of counting it, put half of it in his pocket and said he had to go to court, and that she should return home. The commissioners find this charge sustained by the evidence.

The complaint of Moris Seren charged that he gave money to respondent to settle a judgment against him and that respondent did not settle the judgment and refused to return the money. The commissioners find this charge proved.

To these charges respondent makes no defense other than to say that he had no notice of the report of the commissioners concerning them; that they were investigated by other commissioners, and that it was error to

consolidate them with the complaint known in the record as the "Wise" complaint.

It appears that, as these charges came up, investigation was started during the years 1939 to 1944; that before the report of the commissioners was filed a new complaint was filed. The reports on the other complaints were consolidated with the Wise case report. In this there was no error. These investigations are not to be considered as separate judgments. The report of commissioners is their report on an investigation of respondent's conduct. He was not, and is not, entitled to have each case considered separately. The record shows repeated notices to respondent as to all the hearings and that he must have known of the findings of the commissioners concerning the various charges. Since respondent does not defend these charges on their merits, and as there is no merit to his technical objections, the findings and recommendation of the commissioners concerning those charges may be taken as entirely justified by the record. The principal argument of counsel pertains to the complaint filed by Harry H. Wise.

Before discussing the facts of this complaint, consideration must be given to respondent's contentions which challenge the validity of the investigation of the commissioners and the constitutionality of Rule 59 of this court under which they proceeded. This challenge was in substance embodied in respondent's motion to dismiss the proceeding, filed and denied at the September, 1946, term of this court.

Respondent contends, (1) the creation of the office of commissioner of the Supreme Court is a legislative act, beyond the power of the court to promulgate, and the appointment of commissioners by virtue of Rule 59 of this court is invalid; (2) assuming that this court has power to create the office of commissioner, it is an unlawful delegation of judicial power to permit a private corporation

(the bar association) to make the appointments, and (3) even though the commissioners were validly appointed, they have no power to function without first taking the oath of office prescribed by section 25 of article V of the State constitution.

It is apparent that the foregoing contentions are based on respondent's erroneous assumption that the commissioners are judicial officers of the State, performing judicial functions. In the case of *In re McCallum,* 391 Ill. 400, and that of *In re Donaghy,* 393 Ill. 621, it was pointed out that the commissioners appointed under Rule 59 of this court are a fact-finding body only, whose recommendations are purely advisory, and whose functions under Rule 59 do not constitute a delegation of judicial power. Since the early case of *People ex rel. Moses* v. *Goodrich,* 79 Ill. 148, this court has held that the power to admit attorneys to the bar implies the power to strike an attorney's name from the rolls for misconduct. In other cases such as *People ex rel. Chicago Bar Ass'n* v. *Czarnecki,* 268 Ill. 278, and *People ex rel. Ludens* v. *Harris,* 273 Ill. 413, it was pointed out that the power of the Supreme Court to disbar an attorney is inherent in the Supreme Court. The power to appoint attorneys as commissioners under Rule 59, to investigate and report on the conduct of lawyers, is necessarily contained within the power to disbar, and such appointments cannot be said to be a usurpation of legislative power as respondent contends.

The contention that the commissioners have no power to function without taking the oath of office prescribed by section 25 of article V of the State constitution is also without merit. As has been pointed out, the commissioners are not acting as State officers or performing a judicial function, but rather are acting as attorneys and as officers of the court. As such, they have been sworn to support the constitutions of the United States and of the State of Illi-

nois, and to aid in the administration of justice. The provisions for oaths to be taken by State officers has no application to them.

Respondent next contends that the notary public, who, as such, administered the oaths to the witnesses who appeared against respondent during the hearings, was without lawful power to do so. This contention is based on the provisions of the first section on the statute dealing with oaths and affirmations, (Ill. Rev. Stat. 1945, chap. 101, par. 1,) which provides that notaries public, among others, shall have the power to administer oaths and affirmations to witnesses and others, concerning anything commenced or to be commenced, or pending before them. It is argued that since the investigation proceedings were held before the commissioners and not the notary, the witnesses were not validly sworn. Such argument overlooks the fact that section 2 of the statute on oaths and affirmations (Ill. Rev. Stat. 1945, chap. 101, par. 2,) has been construed as giving a notary public power to administer oaths generally in matters not commenced or pending before them. (*Edwards* v. *McKay*, 73 Ill. 570; *Dyer* v. *Flint*, 21 Ill. 80.) Rule 59 prescribes that witnesses in an investigation before the commissioners "shall be sworn by any person authorized by law to administer oaths." This was done here, and respondent's position that valid oaths were not administered is not well taken.

The facts of the Wise case, as appearing on the hearing, tend to show that on April 13, 1944, one Harry H. Wise filed a complaint with the Committee on Grievances of the Chicago Bar Association, charging that Wise had employed respondent to advise and assist him in the purchase of a parcel of real estate from the receiver of a Chicago bank; that in the course of the transaction Wise gave respondent $2000 with directions to deliver it to the receiver in part payment of the purchase price; that respondent thereafter represented that he had delivered the money and, as evi-

dence of the delivery, gave Wise a receipt purportedly signed by the receiver through his deputy B. C. Hakes; that, however, the $2000 was never delivered and the receipt was a forgery, and respondent converted the money to his own use and failed and refused to account for it. The answer of the respondent denied all allegations of the complaint. Wise's evidence was that he contracted to buy this property on May 13, 1937, for $17,000, of which $11,000 was paid down and the balance was to be paid within a year. Without going into details, it is apparent that Wise had difficulty in paying the $6000 balance. He testified that on the morning of February 7, 1938, respondent telephoned him and stated that if he could raise $2000 in cash, respondent could secure him a credit of $2500 on the balance due; that he (Wise) delivered the $2000 to respondent that afternoon, at which time respondent gave him a receipt which purportedly was signed by B. C. Hakes as a deputy of the receiver of the bank. He testified that respondent also told him he would receive a credit memorandum or receipt from the bank. The receipt referred to was introduced in evidence with the testimony of B. C. Hakes, who described the manner in which he collected money for the receiver and gave receipts therefor. He recalled both the respondent and Wise and his dealings with them but had no recollection of the receipt in question or of a payment of $2000. He stated that the handwriting on the receipt was not his.

Respondent denied that he had received $2000 from Wise or that he had given him the receipt. On advice of counsel he refused to give the commissioners samples of his handwriting to compare with the receipt. His handwriting does appear on other exhibits in the case. The commissioners, however, made no finding of fact based on comparison of respondent's handwriting, which appeared on other exhibits introduced by respondent, and the receipt.

Wise, who had not paid the $6000 balance due on the property at the end of the year, had several talks with Hakes regarding the balance, and finally on October 31, 1939, the contract of the receiver was taken over by the Reconstruction Finance Corporation which wrote to Wise on that date calling his attention to the amount still due on the contract. Wise testified that this was his first knowledge that he had not received a credit for the $2000 he had given respondent on February 7, 1938; that when he asked respondent about the matter, respondent told him that there was a mistake somewhere which he would straighten out. Following another letter from the Reconstruction Finance Corporation about three months later, Wise again questioned respondent about the $2000 and was told not to worry about it and to let respondent handle it. He further testified that early in 1941 respondent and and another lawyer represented him, Wise, in a tax proceeding in connection with the real estate and also were assisting Wise in negotiating a new loan on the premises. Wise testified that respondent promised to return the $2000 out of his share of the fees from the tax proceeding, which fees were to be paid from the proceeds of the new loan. A new loan was secured from an insurance company, and one of the items coming to Wise, the borrower, was $2850 which had been paid to the respondent and another attorney for legal and tax services. Wise testified that respondent cashed this check and made no settlement of the $2000 as he had promised, and that when asked about it respondent said that the other attorney had gotten the money. Respondent denied that he had made such a promise.

Wise also testified to varied and repeated attempts over a period of six or seven months to get in touch with respondent, in an endeavor to collect the $2000 advanced respondent. He is corroborated in this by the testimony of Paul Thurlow, an attorney whom Wise employed to

represent him in other matters and also to make collection of the $2000 from respondent. When these attempts were unsuccessful Wise filed a complaint with the office of the State's Attorney in Cook county charging respondent with forgery, based on the receipt allegedly signed by B. C. Hakes. In explanation of Wise's and Thurlow's testimony that they could not find respondent during this period, the latter testified that he was frequently out of town and had ceased to practice law because he had been ousted from his office for nonpayment of rent and that his records had been retained by his landlord.

Julius L. Sherwin, then an assistant State's Attorney for Cook county, testified that the forgery complaint against respondent had been assigned to him for trial, and that he had several conversations and meetings both with respondent and Wise; that in the latter part of June, 1944, respondent called on him and asked for a delay in the criminal proceeding which was set for July 5, 1944, so that respondent could have an opportunity to raise money to reimburse Wise; that respondent admitted owing Wise $1500 but stated that he was being "clipped" for $500 in the transaction. Sherwin further testified that respondent, in discussing the situation with him, had stated that the Statute of Limitations barred a forgery action against him, and that the least he could be prosecuted for would be a charge of operating a confidence game. Sherwin further stated that he advised respondent to pay Wise $1500 or whatever he would accept in settlement of the existing civil obligation, and that if this was done he (Sherwin) would recommend dismissal of the criminal charges filed against respondent.

The evidence shows that on July 5, 1944, Sherwin, the respondent, Wise, and Thurlow, Wise's attorney, met in or near the court room where the criminal charges were pending against respondent, and following an informal discussion, respondent paid Wise $500 and was given a receipt

therefor by attorney Thurlow. The original receipt was not introduced into evidence, and although a rule was entered against respondent, he stated he was unable to produce it. Thurlow and Wise both testified that the receipt recited that the $500 was paid in consideration of $2000 owed by respondent to Wise, and that the payment was in no way connected with the criminal proceeding then pending against respondent. Sherwin, Thurlow and Wise all testified that at that time respondent complained that he owed Wise only $1500. Respondent admits payment of $500 to Wise on that date, but contends that it was repayment of a personal loan that Wise had made him in February, 1943. He denies that the payment was in any way connected with Wise's claim of $2000 or the criminal proceedings against him, and stated that the criminal trial was continued on July 5, 1944, because of the illness of the attorney who was representing him.

It should be pointed out here that respondent makes no claim that Wise owed him any fees for services performed. His position is one of absolute denial that he received or converted the $2000 from Wise in the manner charged.

Such is the gist of the evidence on the Wise complaint. Respondent contends that there is a total failure of proving the charges of the complaint. In support of this contention he relies largely on alleged discrepancies and negative conclusions drawn from the testimony of the complainant Wise. While it is true that Wise was not prompt in his complaint against respondent, it is apparent from his testimony and his actions that his charges were based on a substantial grievance. Taken with the testimony of the assistant State's Attorney, Sherwin, and of the attorney Thurlow, that respondent made statements amounting to an admission that he had received at least $1500 from Wise, Wise's testimony is entitled to credit. Respondent's statements to Sherwin that he could only be guilty of operating a confidence game, and that the Statute of Limita-

tions had tolled any forgery charge against him, also indicate guilty knowledge. The only evidence to refute these statements consists of blunt denials by the respondent. A perusal of all the evidence introduced indicates far beyond mere suspicion that respondent converted the $2000 which Wise had entrusted to him. In the absence of any finding of fact by the commissioners as to the forgery of the receipt purportedly signed by B. C. Hakes, no further consideration will be given to that charge.

The wrongful conversion by an attorney of funds placed in his hands by a client is a flagrant violation of his duty, sufficient to warrant his disbarment. (*In re Both,* 376 Ill. 177; *People ex rel. Chicago Bar Ass'n* v. *Templeman,* 363 Ill. 152; *People ex rel. Chicago Bar Ass'n* v. *Ladouceur,* 347 Ill. 454; *People ex rel. State Bar Ass'n* v. *Tracey,* 314 Ill. 434.) Sifted of irrelevant evidence, the record before us discloses that the respondent secured $2000 from the complainant Wise which he converted to his own use and personal gain, and not for the purposes for which it was entrusted to him. It is apparent, too, that respondent failed and refused to account for such funds or to make restitution except when forced to make partial restitution under shadow of threatened criminal prosecution. Such conduct shows venality and moral turpitude, which clearly makes it the duty of this court to strike the name of respondent from the roll of attorneys. An examination of the evidence submitted in the Wise complaint shows sufficient cause to warrant disbarment. The report and recommendations of the commissioners are approved. The rule is made absolute and respondent's name is stricken from the roll of attorneys of this court.

*Respondent disbarred.*