(No. 31309.—

IN RE GERALD J. KOPTIK, Attorney, Respondent.

*Opinion filed May 18, 1950.*

CHARLES LEVITON, of Chicago, *amicus curiae.*

GERALD J. KOPTIK, of Berwyn, *pro se.*

Mr. JUSTICE GUNN delivered the opinion of the court:

The Board of Managers and the Committee on Grievances of the Chicago Bar Association, Commissioners of the Supreme Court of Illinois, filed a complaint against Gerald J. Koptik, attorney at law, for unethical and unprofessional practices. Evidence was heard and reported to the Supreme Court, and a recommendation made by the Board of Managers that the said Gerald J. Koptik be disbarred.

The evidence is rather voluminous, and is carefully and accurately abstracted in the report and the recommendation of the Board of Managers. Briefs are filed by both parties. The evidence shows that Koptik was admitted to the bar in October, 1940, and was a graduate of an accredited law school. He immediately commenced the practice of law, and in 1944 became a member of the firm of Lescher & Koptik of Chicago. In 1945 he was retained by a Mrs. Kohout to proceed with the foreclosure of a $2200 mortgage, which was then in the course of foreclosure.

The evidence discloses, without much contradiction, that he received from Mrs. Kohout several sums of money: In February, 1945, $350; In May, 1946, $1200, and in the same month of that year $925. The first sum was to take care of costs and expenses, and the second sum was to purchase the equity of redemption from the mortgagee, and the third sum was to take care of taxes, tax sales and forfeitures. The evidence discloses that he did not acquire the equity of redemption, nor did he pay the defaulted taxes; and in fact, Mrs. Kohout was compelled to employ another attorney to proceed with the foreclosure. When called upon for an accounting, Koptik claimed his fee was $1000, but what he did to earn a fee of $1000, or, for that matter, anything in the foreclosure matter does not appear from the record. In our opinion the committee has dealt generously with Koptik in holding him liable for the conversion of only $1262.95. But this is arrived at after allowing him credit for $1000 fees. We think the evidence justifies the conclusion that the conversion to his own use was nearer $2000 rather than the amount found by the committee.

The evidence discloses that upon another occasion he represented Otis Williamson and John A. Anderson, employees of the Continental Foundry and Machine Company, in making a claim for double damages for overtime work. The suit was filed and tried in the United States court in 1946, and respondent's arrangement was to receive a fee upon a contingent basis, and there was to be no fee paid unless he was successful in the litigation. The court awarded a verdict in favor of the defendant. Respondent advised his clients to take an appeal, and suggested there was good probability of reversing the judgment, and received from his clients the sum of $500 to prepare a record upon appeal. He never prepared a record, and never took an appeal, and admitted that he knew from a moral stand-

point he should return the $500 that he received from his clients.

During the time that the appeal should have been taken, upon inquiry from his clients he assured them that the appeal was progressing nicely. When his clients discovered that no appeal had been taken they made a demand upon him for negligence, and he thereupon entered into an agreement with them that they each had sustained damages because of his neglect, and gave them each a note for $3500. There is no evidence in the record that the respondent returned the $500, although he testified he offered to do so. Upon the notes of $3500, the sum of $100 was paid upon the Anderson note, and nothing else. The finding of the committee is that Koptik had converted $400 of the $500 deposited with him for the cost of preparing the appeal, and this finding, we think, is amply justified.

The third subject of the complaint is that of his transactions with Mrs. Francis Sullivan, his mother-in-law. Mrs. Sullivan operated a school of beauty culture. She seemed to be having some difficulty with the Department of Registration and Education in the conduct of the school. In 1946, respondent brought an injunction suit in her behalf against the Department, and from time to time Mrs. Sullivan deposited over $5000 with the respondent in connection with this lawsuit, and upon cross-examination it is admitted that the amount paid to him upon the beauty-culture case was $5454. When called upon for an accounting he made a charge for his fee of $5000. The uses to which this money was supposed to have been put by the respondent were, first, he claimed that he posted a bond of $3500 for some purpose not explained in the evidence, and there is no proof that he ever posted a bond in any amount whatsoever; and second, at another time he said it was money he was supposed to pay to settle Mrs. Sullivan's case, but he never made any claim that he paid anybody any money.

144

Without going into the details of the evidence it is clear to the court that the respondent deluded his mother-in-law into believing that she could settle the difficulty she was having with the Department with the use of money, and he received from her over $5000, and then attempted to make an accounting of the money by claiming an exorbitant fee of $5000, without any proof whatsoever that he had earned any part of that sum for professional services. The conclusion of the Board of Managers that the respondent had converted the sum of $4750, delivered and entrusted to him by his client for specific purposes, is amply sustained by the evidence.

On the first charge the respondent makes the defense of settlement by way of an indication that the $1200 converted from his client had been repaid. As a matter of fact the evidence does show that Mrs. Koptik, the mother of respondent, repaid Mrs. Kohout the money, but that does not remove the moral turpitude of respondent's act in converting his client's money. Were it the only offense he had committed it would have much greater weight than in the present case, where there are three flagrant violations of duty to a client, shown by overwhelming evidence.

The law is well settled that the conversion of a client's money involves moral turpitude. As late as the case of *In re Rieger,* 402 Ill. 483, we disbarred a lawyer for converting four monthly installments due to his client to his own use, and followed our holdings in the cases of *In re Roth,* 398 Ill. 131, and *In re Both,* 376 Ill. 177, that the conversion by a lawyer of his client's money was a breach of his duty that involved moral turpitude, and for such act he should be disbarred.

The facts in the present case are overwhelming. Not intending to be unjust to the respondent, it seems he would procure money from his client, promise to obtain results, convert it to his own use, and then upon an accounting attempt to offset the amount received by excessive fees.

The latter act only aggravates the original conversion. The recommendation of the Board of Managers that Gerald J. Koptik has been unprofessional, unethical, dishonorable, and shown a lack of good moral character, is amply sustained by the evidence, and the recommendation that the respondent be disbarred and his name stricken from the rolls is adopted by the court.

It is the order of the court that Gerald J. Koptik be disbarred, and his name stricken from the roll of attorneys.

*Respondent disbarred.*