(No. 24971.—

IN RE JOHN K. LENOX, JR., Attorney, Respondent.

*Opinion filed June 15, 1939.*

CHARLES LEVITON, *amicus curiae*.

JOHN FRANKLIN LAX, for respondent.

Mr. JUSTICE JONES delivered the opinion of the court:

In a complaint filed with the committee on grievances of the Chicago Bar Association, John K. Lenox, Jr., an attorney, was charged with converting to his own use certain money received by him from a client, Frank Jurewicz. This money was given Lenox for the purpose of purchasing first and second mortgages on a given piece of property. After a hearing on the supplemental complaint the committee on grievances filed its report recommending respondent's disbarment. The board of managers overruled objections to the report, and ordered it to be filed in this court.

Respondent filed a motion to dismiss the original complaint on the ground it was not signed by the complaining party, Frank Jurewicz, as required by rule 59 of this court. Thereupon a supplemental complaint signed by Jurewicz was filed, setting forth the charges in greater detail. To this supplemental complaint respondent filed an answer. He claims it was error to begin the proceeding on a faulty complaint, dismiss it, and then proceed upon the unverified complaint of Jurewicz, without a preliminary hearing or investigation. This contention cannot be sustained. Rule 59 and an order of this court entered at the April, 1933, term,

give the commissioners a wide discretion as to the procedure to be followed in disbarment suits. They authorize a preliminary hearing or investigation but do not make such procedure mandatory. The commissioners did not abuse their discretion here. The supplemental complaint fully and clearly apprised respondent of the charges made against him, and there was no substantial variance between the allegations and the proof. Respondent was given a full and fair hearing and makes no contention to the contrary. Moreover, it must be remembered that this is not a criminal case with its formalities of pleading, but is an investigation of an attorney's conduct to determine whether he should be disbarred or otherwise disciplined. (*In re Anderson*, 370 Ill. 515.) Nor may respondent invoke technicalities to combat a charge against his professional integrity, where the facts show that, notwithstanding a technical defense, his conduct was ethically or morally without support. *In re Sanitary District Attorneys*, 351 Ill. 206.

There is little conflict in the evidence. It appears that on July 7, 1937, Frank Jurewicz employed respondent as his counsel to represent him in the purchase of a first and second mortgage on certain real estate in Chicago. Later, respondent advised him that he should also obtain a quitclaim deed from the record owner of the land. Jurewicz paid respondent a total of $1050 in cash, and respondent paid $175 on account of the first and second mortgages and $20 for a quit-claim deed from the record owner, leaving him a balance of $855. It was necessary to delay the completion of the transaction because one of the mortgage notes had been lost.

About August 22, 1937, respondent left Chicago without notifying Jurewicz and without leaving any forwarding address. Jurewicz endeavored to locate him, but was unable to do so. He had moved from his old office, and was not at 105 West Adams street, where his name was on the bulletin board. October 11, 1937, respondent was

arrested on a warrant issued at the instance of complainant. At that time he was living at the Mark Twain Hotel in Chicago, under the name of Kelly. Attorney Jack Freeman, who was employed by Jurewicz to close the transaction, testified that he had three or four conversations with respondent after his arrest and that respondent would not tell him what he did with the money, but would remain silent when asked. Respondent made partial restitution after his arrest and gave Jurewicz a deed to some property in Buffalo, New York, as security for the remainder. After two or three continuances, the criminal suit was dismissed for want of prosecution.

Respondent testified that before he left Chicago, he kept the money in a radio cabinet at his apartment; when he left Chicago August 22, he went to a tourist camp near Beecher, Illinois, with a client named Knoderer, for the purpose of helping him buy race horses; he made at least two trips to Louisville, Kentucky; he attended the races at Lincoln Fields frequently and would bet $2 or "something like that." He denied using any of Jurewicz's money, but testified he carried it in a brown envelope in cash. Sometimes he would take it with him to the races and sometimes he would leave it at the camp. He did not know whether it was stolen from him or whether he lost it; he "just lost track of it." He did not notify the police, the race track authorities, the people at the camp, or even his wife. He testified he told Knoderer, but Knoderer was not produced as a witness.

Respondent further testified that September 12, he left for Wisconsin to represent another client, stayed there until about October 9 and was not in Chicago between those dates. However, on cross-examination, when confronted with documentary proof, he admitted he was in Chicago September 30; and after repeatedly denying it, admitted he was in Chicago from October 3 to October 9, registering at the Mark Twain Hotel in the name of Kelly. He did not communicate with Jurewicz at all after he left Chicago

in August. His reason was that he was trying to raise the money with which to reimburse him.

In our opinion it has been proved by clear and convincing evidence that respondent converted to his own use the money entrusted to him by his client. Of course, it was not definitely proved what he did with the money, but that was not necessary. When it was shown that respondent disappeared from Chicago under the circumstances set forth and returned without the money and without communicating with his client, it was incumbent upon him to offer evidence that he had not converted the money to his own use. This he failed to do. Much of his testimony was, by his own admission, false, and for this he cannot be too strongly criticized. Considering this, together with the fact that his explanation was highly improbable, his testimony was unworthy of belief. In the first place, he at least used poor judgment in traveling about the country, staying at tourist camps and mingling with the crowd at the race tracks with $855 of a client's money in cash. In the second place, if he had actually lost the money or if it had been stolen from him, it is unlikely he would have kept it a secret, especially in view of the fact that he is avowedly a man of small means. He said he didn't know just when he "lost track of the money." In the third place, it does not accord with innocence to conceal himself from his client, as respondent undoubtedly did, until arrested, while living under an assumed name. It seems that his story of having lost the money was an afterthought. He first gave this explanation when he answered the supplemental complaint of April, the following year.

By reason of respondent's conduct and his false testimony he has shown himself unworthy to continue to be an officer of this court and a member of the bar of this State. He is, therefore, disbarred and his name ordered stricken from the roll of attorneys.

*Respondent disbarred.*