(No. 27892.—

*In re* E. BENTLEY HAMILTON, Attorney, Respondent.

*Opinion filed Nov. 22, 1944—Rehearing denied Jan. 11, 1945.*

STONE, J., took no part.

AMOS M. PINKERTON, of Taylorville, for the Illinois State Bar Association.

EUGENE D. McLAUGHLIN, of Peoria, for respondent.

Mr. JUSTICE SMITH delivered the opinion of the court:

In September, 1941, the Board of Governors of the Illinois State Bar Association authorized the General Committee on Grievances to institute such investigation and proceedings as it might deem advisable, and to conduct

such hearings as might be necessary, to the end that proper prosecution of respondent and others might be conducted if the investigation by said committee should justify further disciplinary action.

As the result of the investigation of the General Committee on Grievances, a complaint was filed by that committee charging respondent with unprofessional conduct tending to bring the courts and the profession into disrepute. Respondent filed a sworn answer to the complaint. Hearings were had before the committee. The matter was submitted upon the testimony of respondent, and a photostatic copy of a transcript of his testimony given before a Federal grand jury in Springfield in November, 1940.

On February 24, 1943, the committee made a report to the Board of Governors of the State Bar Association. This report contained findings of fact, based upon the evidence which had been heard by the committee. Upon the facts, as found, the committee concluded that while the conduct of respondent was not commended, it did not show such moral turpitude as to justify his disbarment.

On April 21, 1943, a hearing was had before the board of governors on this report. At this hearing respondent was present in person and by counsel. After hearing arguments by respondent and his counsel, and counsel for the association, the matter was referred back to the committee on grievances for a more detailed statement of its findings of fact, and for the hearing of any further evidence or testimony that might possibly be brought forward either by respondent or counsel for the association.

At a meeting of the board of governors held on December 2, 1943, the General Committee on Grievances made a report to the board in which it made the following findings of fact:

"1. That Elisha Bentley Hamilton, an attorney at law was admitted to practice by the Supreme Court of the State of Illinois in the year 1904, and has since his ad-

mission to practice been actively engaged in the practice of law in the City of Chicago and later in the City of Peoria. During all times relevant respondent was engaged in the general practice of law at Peoria.

"2. Some time either in the year 1928 or 1929 respondent was retained and engaged by one Frank J. Boehm, then First Vice President of the Union Electric Company, a Missouri corporation, to act as attorney for this corporation and eleven or twelve of its Illinois subsidiaries. At the time of the engagement the compensation to be paid respondent was discussed. Respondent represented that in his opinion his compensation should be approximately $50,000.00 a year. Boehm felt that his services would not be worth nearly that amount. It was finally agreed that the company would pay to respondent $40,000.00 per year with the understanding that respondent should refund to the company the amount remaining at the end of each year after deducting therefrom the amount of his reasonable compensation for services rendered and expenses incurred upon behalf of the company. It was agreed, if not at the time of the original employment, but a short time thereafter, that respondent's minimum fee would be $7500.00 a year. At the time of the employment of respondent the officials of the company advised him that the company was building Bagnell Dam at very large expense; that they proposed to build (and subsequently did build) a clubhouse and establish fishing and sports and other recreational facilities there in the interest of the public relations of the company; that the expense of establishing and maintaining these recreational facilities would not be regarded as deductible expense for the purpose of determining the rates to be charged by the company for electricity, and they therefore would expect him to refund the amount of the unearned portion of the annual payment in currency and that the company could use the refunded money on the Bagnell Dam project.

"3. From that time up to and including the year 1939 respondent represented the Illinois subsidiary companies of Union Electric Company and rendered numerous services for them varying in extent from year to year depending upon the requirements of the company.

"4. During these years respondent billed the company quarterly for the amount of $10,000.00. The company paid him by check upon the receipt of each quarterly bill. Respondent reported in his yearly income tax returns the receipt of $40,000.00 from the company and took credit as expense for all amounts paid out of the fund to associate counsel and for traveling, office and other expense incurred in connection with the company's business. Respondent testified and there is no competent evidence to the contrary that he made no political contributions upon behalf of the company out of this fund.

"5. About every six months respondent refunded to the company, in currency, the unearned portion of the annual payment after deducting therefrom, in addition to fees and expenses, an amount equal to that part of the Federal income tax paid by respondent which related to the amount returned to the officials of the company. Refunds were made either by respondent taking the currency to the company's St. Louis office in person or by paying it to an official of the company who would call upon respondent at his office in Peoria. The amounts returned to the company or its officials averaged $20,000.00 a year.

"6. The officials of the company did not consult respondent at any time with reference to the propriety or advisability of using the funds in the manner in which they stated the funds were to be used. Respondent kept no book account of the money received from the company or of the amount refunded to its officers, but merely made up a memorandum from time to time from his bank statement, cancelled checks and other memoranda. Re-

spondent did not know if the refunds were recorded upon the records of the company and made no inquiry of any official of the company relative to the way in which they were handling the refunds. Respondent had no knowledge of the use of the money refunded to the company other than the explanation made to him at the time of his employment.

"7. During the latter part of January, 1939 certain representatives of the Securities and Exchange Commission called upon respondent at his office and demanded that he turn over to them for examination all his files relating to the business of Union Electric Company or its subsidiary corporations. Respondent refused until he had been given permission by his client so to do. After respondent had been given permission by his client to make the files available to the investigators he did so. During the week in which the investigation continued at his office, respondent was asked under oath certain questions relating to the disposition of the proceeds of certain checks. Respondent stated to the representatives of the Securities and Exchange Commission that no part of the proceeds of the checks were returned in cash to Frank J. Boehm or any other officer or agent of Union Electric Company of Missouri.

"8. Several months after January 19, 1939, when called upon by another representative of the Securities and Exchange Commission, respondent admitted to this representative that he had not told the truth in answering the questions propounded by the first group of investigators who called upon him in January, 1939. Respondent also admitted this fact when he testified before the grand jury in November, 1940.

"9. Respondent testified at the request of the District and Special Attorneys for the United States Government at the trials of the corporation and its officials at St. Louis,

Missouri and admitted that the refunds were made to the company officials."

Upon the facts as found, the committee concluded that respondent had been guilty of practices which tend to bring the courts and the legal profession into disrepute. Paragraph 6 of the conclusions is as follows:

"6. Realizing the tragic consequence of such a decision and with the utmost regret in view of the high standing at all other times maintained by respondent in the practice of his profession as a lawyer the undersigned members of this committee cannot escape the conclusion that respondent has been guilty of practices that tend to bring the courts of this State and the legal profession into disrepute."

The committee recommended to the board of governors by this report that respondent be disbarred. A copy of this report was delivered to respondent and notice of a hearing thereon was given to him. Exceptions to the conclusions contained in the report were filed by respondent. No exceptions were filed to the findings of fact.

A hearing was had before the board of governors on the report of the General Committee on Grievances, and respondent's exceptions thereto. At this hearing respondent was present in person and by counsel. Arguments were heard, the exceptions were overruled, and the board directed the filing of a report in this court finding respondent guilty of unprofessional conduct tending to bring the courts and the profession of law into disrepute, and recommending that his name be stricken from the roll of attorneys of this court.

Respondent has brought up a part, only, of the evidence on which the action of the grievance committee and the board of governors was taken. The record does not contain a transcript of the testimony of respondent given before the Federal grand jury at Springfield, a photo-

static copy of which was, by stipulation, admitted in evidence on the hearing, subject only to the objections to certain comments made by persons present when the testimony before the grand jury was given.

By respondent's designation of the parts of the record to be certified to this court, he expressly directed that such transcript should not include this photostatic copy of his testimony given before the Federal grand jury. Inasmuch as respondent filed no exceptions to the findings of fact reported by the general grievance committee to the board of governors, and by the Board of Governors, acting as commissioners of this court under Rule 59, approved and filed in this court, and by reason of the further fact that he has not brought to this court all the evidence upon which the commissioners' findings of fact are based, such findings are conclusive and the only question presented is whether the facts found warrant the commissioners' conclusions of law. (*People ex rel. Chicago Bar Ass'n* v. *Gilbert,* 263 Ill. 85.) This rule applies with equal force where a part, only, of the evidence taken is presented, as the correctness of the commissioners' findings of fact cannot be questioned in this court unless the whole of the evidence taken is before us. *People ex rel. Chicago Bar Ass'n* v. *Tilton,* 284 Ill. 385.

The points stated in respondent's brief as the errors relied upon in this court do not question the findings of fact. These errors, as stated in the brief, relate solely to the conclusions and recommendations of the board of governors and to the action of the grievance committee in making its second report.

Taking up the errors assigned in the inverse order in which they are stated in the brief, we will first notice the contention of respondent that the first report of the grievance committee to the board of governors was final, and that neither the committee nor the board of governors

thereafter had power to change that report, or to reach a different conclusion. In support of his contention that the first report and recommendation of the grievance committee was final and constituted a bar to all further or subsequent proceedings, respondent cites as authority *In re Amaden,* 380 Ill. 545. That case is not authority for the contention made. The statement in that case as to the finality of the finding of the commissioners was made with reference to the finding as to an attorney tried jointly with the respondent in that case, and as to whom the commissioners did not recommend that any action be taken by this court, and as to whom no report was filed in this court. That case is not authority in any sense for the proposition advanced. It has no reference whatever to a report made by the grievance committee to the board of governors and not approved by the board. A disbarment proceeding is not a criminal case with its formalities of pleading, but is an investigation of an attorney's conduct to determine whether he should be disbarred or otherwise disciplined. A respondent cannot invoke technicalities to combat a charge against his professional integrity where the facts show that, notwithstanding a technical defense, his conduct was morally or ethically without support. *In re Lenox,* 371 Ill. 505.

Throughout his briefs in this case, respondent has indulged in an attack upon the grievance committee and the Board of Governors of the State Bar Association. The attack is wholly beside the issues in the case and has been of no aid to the court in the determination of those issues. The contention of respondent that the first report of the grievance committee was final and constitutes a bar to all further proceedings against him, is highly technical and cannot be sustained. The first report of the grievance committee was made to the board of governors in accordance with the authority vested in the committee

when the matter was referred to it by the board. Upon a full hearing before the board, in which respondent and his counsel participated, that report was not approved. The whole matter was referred back to the committee for further action. After further consideration of the evidence theretofore taken, the committee made its second report to the board which, after a full hearing in which respondent and his counsel participated, the board approved. This is the report which is the basis of the report filed in this court under Rule 59. Respondent is in no position to attack either the grievance committee or the board of governors when he has accepted their findings of fact by not filing any exceptions thereto, and when he has not brought up the entire record to enable this court to review those findings. We find nothing either in the proceedings or in the action of the committee or the board of governors subject to censure, and the criticism in the briefs is unfounded. The record here is open only to a determination of the legal conclusions to be drawn from the facts as found by the commissioners. *In re Carr,* 377 Ill. 140.

The findings of fact clearly show that respondent is guilty of unprofessional conduct which tends to bring the legal profession, the administration of the law, and the courts, into disrepute. He is subject to disciplinary action for such conduct.

Respondent is suspended from the practice of law in this State for the period of three years.

*Respondent suspended.*

Mr. JUSTICE STONE took no part in the consideration or decision of this case.