(No. 31256.—

IN RE MANDEL YABLUNKY *et al.*, Attorneys, Respondents.

*Opinion filed September 21, 1950—Rehearing denied Nov. 17, 1950.*

CHARLES LEVITON, *amicus curiae.*

YALE & YALE, (BEN YALE, of counsel,) both of Chicago, for respondents.

Mr. Justice Wilson delivered the opinion of the court:

The board of managers and the committee on grievances of the Chicago Bar Association, as commissioners of this court, have filed a report and a supplemental report finding that the respondents, Mandel Yablunky, otherwise known as Mandel Yale, admitted to the bar on February 16, 1922, and Ben Yale, otherwise known as Bernard Yale, admitted to the bar on June 14, 1928, were guilty of unprofessional conduct as attorneys and counselors at law and recommending that they be disbarred. Additional hearings resulting in the supplemental report were necessitated by the fact that, in the complaint and throughout the original hearings, respondents were designated only as Mandel Yale and Bernard Yale, both by themselves and by all other participants in the proceedings, and it was not until after the original report had been transmitted to the clerk of this court that it was discovered that no persons having these names were listed on the roll of attorneys. Thereafter, further hearings were held for the purpose of determining the true identity of respondents. After finding that respondents were licensed as attorneys under the names of Mandel Yablunky and Ben Yale, the commissioners ordered the record and the original report amended accordingly. This finding was incorporated in the supplemental report and, in addition, the commissioners also found that respondents, by engaging in incredible and unparalleled dilatory tactics, technical objections and unfounded contentions, made deliberately and in bad faith, in this disbarment proceeding, have aggravated their original wrongful conduct and indicated beyond doubt that they are unworthy to remain on the roll of attorneys. Respondents filed objections to the original report and challenge the validity of the supplemental proceedings.

The complaint against respondents, filed July 16, 1948, was initiated by the bar association's committee on inquiry, and was, in turn, based upon a complaint made to the com-

mittee by Henry Miles. Complainant alleged, in substance, that respondents practiced law under the firm name of Yale & Yale; that, in 1937, Miles engaged respondents to purchase a certain vacant lot in Chicago for him for $500, including attorney's fees; that Miles paid respondents $500, as agreed; that respondents falsely represented to Miles that they had procured a deed conveying the property to him and promised to have the deed recorded; that Miles subsequently improved the property and leased it, and that, in 1947, Miles was dispossessed by the true owner of the property and subjected to a criminal investigation upon the complaint of his lessee.

Notice of the filing of the complaint, a copy of the complaint and a copy of the rules of procedure adopted by the commissioners, pursuant to Rule 59, were served upon each of the respondents on July 29 and 30, 1948. In the notice accompanying the complaint, respondents were advised immediately to select counsel to represent them or to apply for the appointment of counsel, as was their right under the commissioners' rules of procedure. Under Rule 4, respondents had fifteen days within which to file an answer, the rule further providing that, in the event of the failure or refusal to file an answer, the commissioners may proceed with a hearing on the issues made by the complaint, which shall be considered as if traversed by a general denial.

Respondents entered their appearances *pro sese* on August 3, 1948. In their joint answer, filed August 13, 1948, respondents averred they had a good defense which they could not interpose because the commissioners were prejudiced against them by reason of a pending disbarment proceeding brought against Mandel Yale in 1947. The remainder of the answer was devoted to a recital of the history and current status of the other disbarment proceeding. Thereafter, the present proceeding was set for hearing on September 15, 1948. On motions by the respondents, the hearing was reset to September 29, and then to November

10, in order to provide them additional time to prepare their defense. On November 4, respondents sought a third continuance. This motion was denied and, on November 9, their motion for leave to withdraw their answer and to file an amended answer within a time to be set was also denied, but without prejudice to the filing of amendments to the answer or an amended answer.

On November 10, respondents appeared in person and by Leo H. Arnstein, an attorney. It appearing that Arnstein had come into the case only four hours before the hearing, the commissioners granted respondents' motions to continue the matter until November 17 and for leave to file an amended answer within five days. On November 13, respondents appeared *pro sese,* not by their attorney, and moved for an extension of time for filing an amended answer and for a continuance of the hearing set for November 17. These motions were denied. On November 17, Arnstein reported that, because of respondents' directions to him to ask for another continuance, he refused to represent them and announced that he had been duped into obtaining the continuance granted on November 10. Arnstein was thereupon granted leave to withdraw as counsel. At the same time, respondents moved for a continuance to enable them to engage new counsel and also renewed their motion for an extension of time for filing their amended answer, then two days overdue. These motions were denied and, over the objections of respondents that no issue had been made by the pleadings, the commissioners proceeded to a hearing on the merits.

The evidence for the complainant, consisting of the testimony of Miles and Samuel S. Brown, an attorney, and certain exhibits, established the following facts: Respondents, known individually as Mandel Yale and Bernard Yale, are brothers and have for many years practiced law in Chicago under the firm name and style of Yale & Yale. In 1935, Miles, a client of long standing, first discussed

with respondents the possibility of purchasing a vacant lot, commonly known as 4049 Prairie Avenue, Chicago, from the receiver of the Chicago Bank of Commerce, the owner of the property. Early in June, 1937, respondents informed Miles that the property could be acquired for $500, including the cost of a title guaranty policy and attorneys' fees and, on June 12, 1937, Miles entered into a written contract with respondents, authorizing and directing them to buy the lot for him, and agreeing to pay them $500, in monthly installments of $50 each. Mandel Yale signed the contract for the firm. Miles completed his payments on March 2, 1938, and, shortly thereafter, Mandel Yale called upon him and tendered a deed. Miles asked if the instrument had been recorded and, upon receiving a negative reply, told Mandel Yale to keep the deed and paid him $10 to have it recorded.

About the same time, Miles expended $7000 in improving the property with a hall and, later, converted the structure into a storehouse. In November, 1946, he leased the property to W. S. Grady for a term of twenty years, the lease including an option to purchase. About November 1, 1947, Miles received a letter from William H. Terrel, stating he was the owner of the property and demanding an accounting of rents collected. A letter from the State's Attorney's office, dated November 19, 1947, informed Miles that Grady had filed a complaint against him and asked him to appear in connection therewith on December 15, 1947. After receiving these letters, Miles communicated with respondents almost daily. At first they told him they were searching for his deed. Afterwards, they told him to ignore the matter and that they would have his deed for him prior to the scheduled meeting at the office of the State's Attorney.

Miles then retained Samuel S. Brown to represent him. Brown found no record of any deed to Miles and ascertained that title to the lot had remained in the Chicago

Bank of Commerce until October, 1947, when the property was conveyed to Terrel. At the hearing at the State's Attorney's office, Brown exhibited Miles's contract with Yale & Yale and the receipts for his payment of the purchase price, whereupon the complaint against Miles was dismissed. Prior to the meeting, Bernard Yale, who was also present, offered to pay Miles $585, the amount claimed by Grady, in full settlement of any claims Miles might have against his firm. This offer was refused. Other settlement negotiations initiated during the course of the hearing were broken off about two and one-half months later when, after two extensions of time, respondents still refused to agree to anything and wanted another thirty days to work on the matter. Miles lost both the lot and the improvement, and respondents have never offered to return the $500 he paid them for the land or to reimburse him for the loss of the building he erected.

Respondents declined to cross-examine either Miles or Brown and, although they refused to present any evidence, a rule was entered upon them to close proofs on November 24. At the hearing on November 24, respondents moved for a continuance upon the ground they did not know proofs were to be closed. The motion was denied and, respondents persisting in their refusal to offer any evidence to combat the charge against them, proofs were ordered closed. Thereafter, the commissioners prepared a report recommending disbarment, objections to the report were heard and overruled, and, on March 5, 1949, the record and report were transmitted to the clerk of this court. The record and report were returned to the commissioners a few days later, with the information that the names of Mandel Yale and Bernard Yale did not appear on the roll of attorneys, but that a Mandel Yablunky and a Ben Yale were so enrolled.

The commissioner then set a hearing for March 17, 1949, for the purpose of amending the record and report

to designate the respondents as Mandel Yablunky, otherwise known as Mandel Yale, and Ben Yale, otherwise known as Bernard Yale. Respondents appeared in person on the day mentioned and objected to the hearing upon the grounds that notice had been sent to Yale & Yale and not to Mandel Yablunky and Ben Yale, that the commissioners had no right to change the title of the proceeding without the consent of the court, and that the motion to amend the report was improper because the proofs had already been closed. Respondents refused to answer all questions about their names and, as a consequence, two further hearings were required for the purpose of presenting evidence as to their true identity. The innumerable objections made by respondents at those hearings ranged from the contention that one of their own brothers was not qualified to testify as to their names to the argument that a decree of the superior court of Cook County, dated January 30, 1923, changing the name of the petitioner therein from Mandel Yablonky to Mandel Yale was not admissible in evidence because the decree showed that the petitioner's last name was Yablonky and not Yablunky.

On April 28, 1949, the commissioners found that respondents were licensed to practice law under the names of Mandel Yablunky and Ben Yale and ordered the record and report amended to reflect this fact. At the same time, respondents' pending motions for leave to file an amended answer and to defend and introduce evidence were granted and they were allowed ten days within which to file an amended answer. No amended answer was filed and, on May 11, 1949, the date set for the hearing, respondents appeared and advanced some twenty-eight grounds for dismissing the entire proceeding. The motion was denied and respondents elected to stand upon their motion. Proofs were ordered closed and the matter was taken under advisement. On May 23, the commissioners entered an order confirming their original report, as amended, and respond-

ents were notified that their oral objections, made May 11, would stand as objections to all reports and orders, and all further objections were to be filed by June 1. On June 2, the date set for the hearing of objections to the report, respondents moved for leave to file an amended answer *instanter* and the motion was granted. The gist of the amended answer is that respondents were unable to purchase the lot in question and so notified Miles; that they never told Miles they had obtained a conveyance; that Miles improved the property knowing he did not have title, and that the $500 received from Miles was applied to fees for legal services rendered in other matters. The cause was set for hearing on June 23. On June 20, however, respondents moved to continue the hearing for ninety days upon the ground they required more time to prepare their defense. This motion was denied and, on June 23, respondents moved for a continuance upon the further ground that they needed additional time to employ counsel. This motion was also denied. Upon the refusal of respondents to present any evidence, proofs were closed for the third and last time and the hearing was concluded.

The undisputed facts show that the respondents converted the funds of Henry Miles, a client, to their own personal use and gain. Such conduct involves moral turpitude, it being well settled that the wrongful conversion of a client's funds is a flagrant violation of the duties of an attorney and is sufficient to warrant disbarment. (*In re Rieger,* 402 Ill. 483; *In re Both,* 376 Ill. 177; *People ex rel. Chicago Bar Association* v. *Templeman,* 363 Ill. 152; *People ex rel. Chicago Bar Association* v. *Ladouceur,* 347 Ill. 454; *People ex rel. State Bar Association* v. *Tracey,* 314 Ill. 434.) The conduct of respondents in wrongfully converting the funds of a client was unethical, denotes a lack of good moral character and tends to bring the profession of the law into disrepute and contempt.

Seeking to avoid disbarment, respondents first contend that the commissioners erred in hearing evidence for complainant on November 17, 1948, because, at that time, they had no answer on file joining issue with the complaint. Respondents do not attack the validity of Rule 4 of the commissioners' rules of procedure and, in view of the fact that Rule 4 provides that the failure or refusal to file an answer shall be treated as a general denial, it is difficult to perceive why respondents persist in a contention which is so obviously devoid of merit.

The respondents next complain that the commissioners abused their discretion in denying their motion of November 17, 1948, for a continuance to engage new counsel. On July 29 and 30, 1948, respondents were advised to obtain counsel immediately. As early as August 3, 1948, they indicated their intention to represent themselves by filing their appearances *pro sese*. This, they had a right to do. In point of fact, respondents acted as their own attorneys at all times, except on November 10, when they were represented by Arnstein. Their retention of Arnstein only four hours before the hearing of November 10, and their subsequent directions to him to seek a further continuance lead strongly to the conclusion that respondents engaged Arnstein solely for the purpose of having a plausible excuse for asking for more continuances. Upon a consideration of all the facts and circumstances, it cannot be said that the commissioners abused their discretion in denying respondents' motion of November 17 for a further continuance for the alleged purpose of engaging new counsel.

The third contention advanced by respondents is that the commissioners erred in reopening proofs for the purpose of receiving evidence that they were licensed as attorneys under the names of Mandel Yablunky and Ben Yale. Respondents apparently take the position that the original hearings were a nullity because the names Mandel Yale

and Bernard Yale do not appear on the roll of attorneys, and they further contend that the supplemental hearings were also void, because, after proofs had once been closed and a final report prepared, the case was ended and the commissioners had no authority to hear additional evidence. The contentions made are, at best, highly technical, if not frivolous. Respondents engaged in the original proceeding under the names of Mandel Yale and Bernard Yale and did not complain that they were improperly designated. They were not prejudiced by the supplemental proceedings and, in fact, do not deny that their names appear on the roll of attorneys as Mandel Yablunky and Ben Yale. In addition, the proofs are conclusive that respondents are correctly named in the amended record and reports. As we have frequently observed, a disbarment proceeding is not a criminal case nor an ordinary civil proceeding, with their attendant formalities of pleading, but an investigation of the conduct of an attorney to determine whether he should be disbarred or otherwise disciplined, and a respondent cannot invoke legal technicalities to combat a charge against his professional integrity. *In re Hamilton,* 388 Ill. 589; *In re Carr,* 377 Ill. 140; *In re Lennox,* 371 Ill. 505; *In re Doss,* 367 Ill. 570.

Respondents next assert that the commissioners erred in denying their motions for a continuance of ninety days from June 23, 1949. In this connection, it should be observed that respondents were apprised of the necessity of procuring proof relative to their transaction with Miles as early as November, 1947; that the complaint in this proceeding had been served upon them almost a full year before they requested this continuance; that they had twice before refused to present any evidence or even file an answer on the merits, and that they had an unbroken record of obstructionist tactics and unfounded contentions. Reasonable minds can only conclude that if respondents were not prepared for trial on June 23, 1949, they would never be

ready. The challenged orders denying the requests for a further continuance were not erroneous.

Lastly, respondents contend they were tried on other charges in addition to those alleged in the complaint. Respondents refer to the findings in the supplemental report relative to their conduct in this disbarment proceeding. Contrary to the contention made, respondents were not tried upon the basis of their conduct in this proceeding. The commissioners' recommendation that respondents be disbarred rests squarely upon the uncontroverted proof that they wrongfully converted the funds of a client to their own use, as charged in the complaint.

The report, the supplemental report, and the recommendation of the commissioners are confirmed. The respondents, Mandel Yablunky, otherwise known as Mandel Yale, and Ben Yale, otherwise known as Bernard Yale, are disbarred from the practice of law, and their names are ordered stricken from the roll of attorneys of this court.

*Respondents disbarred.*