(No. 41261.—

*In re* JOHN F. CZACHORSKI, Attorney, Respondent.

*Opinion filed January 29, 1969.*

John Cadwalder Menk, of Chicago, *amicus curiae*.

Stanley Werdell, of Chicago, for respondent.

Mr. Justice Klingbiel delivered the opinion of the court:

The Board of Managers and Committee on Grievances of the Chicago Bar Association, as commissioners of this court, have filed a report recommending that respondent, John F. Czachorski, be suspended from the practice of law for a period of one year. The commissioners found that on one occasion the respondent converted the funds of a client to his own use, and on two other occasions he failed to perform services for which he had been paid, all tending to bring the bench and bar of this State into disrepute. Respondent has filed exceptions to the report.

Respondent was admitted to the bar of this State in 1950 and is presently in practice with his mother and an older brother, both of whom are also members of the Illinois bar. The testimony on count I shows that in March of 1966 he was retained by Geneva Dalessandro to procure a release of her husband from custody. The husband had been committed for contempt of court in failing to pay his former wife support money for the child of the previous marriage. Respondent called the former wife's attorney, Glenn Lantry, who informed him that the sum of $650 would have to be paid before he would consent to a release

of Dalessandro. Mrs. Dalessandro went to the bank and obtained the money, turning it over to the respondent the next morning when she accompanied him to court. Lantry was unable to appear because of another matter, but had authorized respondent by telephone to present the order for release and to sign Lantry's name if necessary. Respondent had promised to mail a check to Lantry immediately upon a release of Dalessandro. Dalessandro was released but no check was sent to Lantry. When he called about it four or five days later respondent promised to send it that same day. Again no check was forthcoming and a few days thereafter Lantry called again. He refused to accept another promise to mail but advised respondent he would meet him at the latter's office the following morning at 9:30 to get the money. When he went there at that time respondent gave him $400, saying he did not have the balance but would send it in a very few days. The balance was never sent, and it became necessary for Dalessandro to pay it to Lantry in addition to the sum his wife had turned over to respondent. Respondent presented no evidence on his own behalf but sought to argue that the deficiency had been retained as attorney's fees. It further appears that according to the testimony of Mrs. Dalessandro respondent called her on the day before the hearing herein and offered her $300 "to drop this case" and "to get me off the hook." The offer was refused.

The second charge of unprofessional conduct involved an uncontested divorce case. It appears from the testimony of the client, Charles Gardner, that he retained the respondent to protect his interests with regard to alimony and property matters, paying a fee of $235, that his wife obtained the divorce, that Gardner was not present in court, and that his wife's attorney, one Kaplan, called him in the absence of respondent and induced him to sign an approval of the decree. It further appears that after making several attempts neither he nor Kaplan was able to reach the re-

spondent, that he signed his name to the decree in Kaplan's office, and that he was not satisfied with its terms but okayed it because he "didn't want to have to wait months and months to go through it all again." The commissioners found that by not being available when needed the respondent was guilty of neglecting to give proper attention to the affairs of his client and failing to perform services for which he had been paid.

In the third incident for which discipline is recommended, respondent undertook to represent Gardner in certain eviction proceedings brought by the latter's landlord. He failed to appear and a judgment by default was entered against Gardner, followed by a garnishment of his wages. When Gardner saw the respondent after receiving notice of the judgment, respondent advised him that since he was about to file a petition in bankruptcy it was unnecessary to answer in the eviction case. Gardner had paid respondent $300 to cover costs and attorney's fees in connection with the bankruptcy, but respondent never filed a petition on his behalf. After complaint was made to the committee on grievances, respondent refunded the $300. No evidence was introduced on behalf of respondent relevant to any of the three charges.

There is no merit in respondent's claim that the findings are not supported by the evidence. The testimony on behalf of complainant stands uncontroverted. The commissioners heard the witnesses and observed their conduct and demeanor, and, with the possible exception of count II, they were amply warranted in drawing the inferences in question. They considered and found on count I that conversion by the respondent had been proved with regard to the funds belonging to the Dalessandros, and while there is no evidence of the precise use which he made of this money we cannot do otherwise than follow the commissioners' conclusion, in the absence of some explanation on his part. Such conduct can hardly be excused. The court has long

ago pointed out that an attorney occupies a fiduciary relation to his client, and that "If he receives money belonging to a client and there is no obstacle to its immediate payment, the only course consistent with his office is to pay it over immediately, * * *." (*People ex rel. Chicago Bar Ass'n* v. *Kwasigroch,* 296 Ill. 542, 548.) The neglect of duty shown under counts II and III also amounts to conduct tending to bring the profession into disrepute, even though in the matter of the bankruptcy the fee was refunded and even though the client requested that disciplinary proceedings be dropped.

Respondent contends he was prejudiced by the denial of his motion for a continuance, made when the hearing was about to begin. We do not agree. There was ample time to prepare. The complaint was served January 16, 1967, and hearing set for February 28. It was reset to March 28, and on respondent's motion was further postponed to May 16. On that date when the complainant's four witnesses were again present to testify, the respondent's counsel sought a further continuance on the ground that he had just recently been engaged by respondent and needed time to familiarize himself with the matter. No explanation appears, however, why respondent waited so long before retaining counsel. Under the circumstances we cannot say the commissioners abused their discretion in refusing to grant further continuances. *Cf. In re Yablunky,* 407 Ill. 111, 119.

After the proofs were closed respondent moved to reopen, and was given leave to file an amended motion supported by affidavit setting forth the nature and substance of the new and additional testimony sought to be offered. After two further extensions of time an amended motion was filed but it failed to specify any new and additional evidence. The motion was accordingly denied. Claiming this was error, respondent argues that he refrained from testifying on advice of his counsel and that such advice was a "conscientious error" on the latter's part. We cannot ac-

554

cept the contention. Under the circumstances here, there is nothing in the alleged facts relied upon to show the commissioners abused their discretion in denying the motion.

A final contention is made that the commissioners erred in admitting certain items of evidence. It is unnecessary to discuss this at length, however. The matters objected to were of minor significance and could not have affected the recommendation of the commissioners or the action of this court. As we have frequently observed, a disciplinary proceeding is neither a criminal prosecution nor an ordinary civil case, but an investigation into the conduct of an attorney as an officer of the court, to determine whether censure or disciplinary measures are called for. In such a proceeding the ultimate responsibility rests on this court, and technical objections as to practice and procedures before its commissioners will not be considered. See *In re Royal,* 29 Ill.2d 458, 460; *In re Yablunky,* 407 Ill. 111, 120.

The commissioners were not unmindful of the considerations urged on respondent's behalf. They have carefully weighed the question of what discipline should be recommended and have fairly determined that it ought to be a suspension of the respondent for a period of one year. Their recommendation is not in our opinion unduly harsh and it is, accordingly, adopted by this court.

*Respondent suspended.*